IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

D. RONALD RENEKER, SPECIAL     §
RECEIVER FOR AMERIFIRST        §
FUNDING, INC., et al.,         §
                               §
                   Plaintiff,  §
                               § Civil Action No. 3:08-CV-1394-D
VS.                            §
                               §
PHILLIP W. OFFILL, JR., et al., §
                               §
                   Defendants. §

MEMORANDUM OPINION
AND ORDER

    Defendants move anew to dismiss this action under Fed. R. Civ.

P. 12(b)(6).  The court must decide whether plaintiff D. Ronald

Reneker, Esquire ("Reneker"), as special receiver for several

entities, has stated a legal malpractice claim with sufficient

specificity and whether his claim is barred by the affirmative

defense of *in pari delicto*.  Concluding that Reneker has stated a

claim on which relief can be granted and that a viable *in pari*

*delicto* defense is not apparent from the face of his second amended

complaint, the court denies the motion to dismiss.

I

    The court assumes the parties' familiarity with the background

facts and procedural history recounted in two prior memorandum

opinions and orders filed in this case.  *See Reneker v. Offill*,

2009 WL 3365616, at *1–*2 (N.D. Tex. Oct. 20, 2009) (Fitzwater,

C.J.) ("*Reneker II*"); *Reneker v. Offill*, 2009 WL 804134, at *1–*2

(N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.) ("*Reneker I*").

AmeriFirst Funding, Inc. a/k/a Ameri-First Funding, Inc. a/k/a Ameri First Funding, Inc. ("AmeriFirst Funding") and AmeriFirst Acceptance Corp. ("AmeriFirst Acceptance") sold "Collateral Secured Debt Obligation Notes" ("CSDOs") to the public and in doing so violated the registration and anti-fraud provisions of various federal and state securities laws. In 2007 the Securities and Exchange Commission ("SEC") brought an enforcement action ("SEC Enforcement Action") under §§ 5(a), (c), and 17(a) of the Securities Act of 1933 against AmeriFirst Funding, AmeriFirst Acceptance, Jeffrey C. Bruteyn ("Bruteyn"), and Dennis W. Bowden ("Bowden"). American Eagle Acceptance Corp. ("American Eagle") and Hess Financial Corp. ("Hess Financial") were sued as relief defendants. In a first amended complaint, the SEC added InterFinancial Holding, Corp. ("InterFinancial Holding"), Hess International Properties, LLC ("Hess LLC"), Hess International Investments, S.A. ("Hess SA"), Gerald Kingston ("Kingston"), and United Financial Markets, Inc. ("United Financial") as relief defendants. The SEC ultimately obtained judgments against all defendants and relief defendants except United Financial, who was dismissed on the SEC's unopposed motion.[1]   The court entered

---

[1]The court dismissed the claims against United Financial on March 30, 2009 on the SEC's unopposed motion. The court entered final judgments against the following defendants and relief defendants on the dates shown: AmeriFirst Funding (September 22, 2008); AmeriFirst Acceptance (September 22, 2008); Bruteyn (May 5, 2008); Bowden (March 30, 2009); American Eagle (September 22, 2008); Hess Financial (May 5, 2008); InterFinancial Holding

injunctions enjoining further violations of the securities laws and disgorgement orders totaling approximately $56 million along with prejudgment interest.

In 2006, before the SEC enforcement action was filed, the Texas State Securities Board ("TSSB") made a formal written inquiry requesting information about the offering of the CSDOs. Bruteyn, AmeriFirst Acceptance, AmeriFirst Funding, and American Eagle (collectively, the "AmeriFirst Clients") engaged defendant Godwin Pappas Ronquillo, LLP f/k/a Godwin Pappas Langley Ronquillo, LLP f/k/a Godwin Gruber, LLP and one of its partners, defendant Phillip W. Offill, Jr. ("Offill") (collectively "Godwin Pappas" unless the context otherwise requires), to respond to the inquiry and to aid in the registration and sale of the CSDOs.

As part of the SEC Enforcement Action, the court appointed Reneker as special receiver to make decisions concerning the filing, prosecution, and ultimate disposition of any lawsuit that includes Godwin Pappas as a defendant. *See SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D (N.D. Tex. June 5, 2008) (Fitzwater, C.J.) (order). Reneker later filed this lawsuit against Godwin Pappas asserting in his complaint that Godwin Pappas acted negligently in responding to the TSSB inquiry and in general in failing to aid the AmeriFirst Clients in the proper registration

---

(September 22, 2008); Hess LLC (September 22, 2008); Hess SA (September 22, 2008); and Kingston (February 29, 2008).

- 3 -

and sale of the CSDOs.  He also alleged that Godwin Pappas breached its fiduciary duty to the AmeriFirst Clients by failing to act with abundant good faith, perfect candor, openness, and honesty, without concealment or deception, and without making full and fair disclosure of all material facts.

In *Reneker I* the court dismissed this action for failure to state a claim on which relief could be granted.  *See Reneker I*, 2009 WL 804134.  The court held it had ancillary subject matter jurisdiction to hear Reneker's claims, *id.* at *4, but concluded that Reneker lacked standing to bring his negligence claim as it was then pleaded.  *Id.* at *6.  Reneker had only alleged that Godwin Pappas' negligence had resulted in harm to the CSDO investors, not to the AmeriFirst Clients.  *Id.*  The court also dismissed Reneker's breach of fiduciary duty claim because Reneker either had not adequately alleged a breach of such a duty to the AmeriFirst Clients or the claim improperly fragmented his negligence claim. *Id.* at *10.  The court granted Reneker leave to amend.  *Id.*

Reneker then filed a first amended complaint, alleging only a negligence claim, and Godwin Pappas moved anew to dismiss.  In *Reneker II* the court granted Godwin Pappas' motion.  *See Reneker II*, 2009 WL 3365616.  Although the court held that Reneker had standing to bring the amended claim, *see id.* at *3, it concluded that Reneker failed to allege that Godwin Pappas had breached a duty owed to the AmeriFirst Clients.  *Id.* at *4.  Reneker alleged

- 4 -

that Godwin Pappas had a duty to blow the whistle on the AmeriFirst Clients' illegal activities, but the court reasoned that such a duty, if it existed, would only be owed to the securities authorities, investors, or the public, not to the AmeriFirst Clients. *Id.* at *4. Reneker also alleged that Godwin Pappas had a duty to assist the AmeriFirst Clients in legally offering their securities for sale. *Id.* at *5. The court held that Reneker failed to allege a breach of that duty because he did not assert sufficient facts to make such a claim plausible on its face. *Id.* Reneker did not allege that the AmeriFirst Clients were unaware of the illegality of their actions or that Godwin Pappas was acting contrary to its clients' instructions. *Id.* Finally, the court held that Reneker failed to adequately plead proximate cause because it was speculative to assume that, if Godwin Pappas had notified the AmeriFirst Clients of the illegality of their actions, the clients would have ceased their illegal activity. *Id.* at *6. The court granted Reneker the opportunity to replead. *Id.* at *7.

Following *Reneker II*, Reneker has filed a second amended complaint that is the subject of Godwin Pappas' instant motion to dismiss under Rule 12(b)(6). Godwin Pappas maintains that Reneker has failed to state a claim and that the affirmative defense of *in pari delicto* is clear from the face of Reneker's second amended complaint and precludes his suit as a matter of law.

II

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While "the pleadings standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl.*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion, "[t]he 'court accepts all well-pleaded facts as true viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Bell Atl.,* 550 U.S. at 555 ("Factual allegations must be

- 6 -

enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged——but it has not 'shown'——that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted).

III

A

"To prevail on a negligence cause of action under Texas law, plaintiff[] 'must establish the existence of a duty, a breach of that duty, and damages proximately caused by that breach.'" *Davis v. Dallas County, Tex.*, 541 F.Supp.2d 844, 850 (N.D. Tex. 2008) (Fitzwater, C.J.) (quoting *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005)).   Reneker must allege facts that, when viewed in the light most favorable to him, allow the court to draw the reasonable inference that Godwin Pappas is liable for negligence under Texas law.   In *Reneker II* the court held that "[a]ttorneys unquestionably have a duty to their clients to advise them of the legality of their actions and to assist them in accordance with the degree of care that would be exercised by a reasonably prudent attorney."   *Reneker II*, 2009 WL 3365616, at *5.   But the court concluded that Reneker did not provide sufficient factual details in his first amended complaint to make a claim of a breach of this duty plausible on its face.   *Id.*

B

In his second amended complaint, Reneker has added a substantial amount of factual detail to the allegations that the court deemed insufficient in his first amended complaint. Reneker now focuses on the claim that Godwin Pappas specifically acted negligently in responding to the TSSB's inquiry and by failing to ensure that the AmeriFirst Clients' securities offerings were in compliance with all relevant rules and regulations. Reneker has significantly fleshed out his claim that the AmeriFirst Clients were unaware of the illegality of their actions and that they relied on Godwin Pappas to aid them in properly preparing and offering securities. Godwin Pappas nevertheless maintains that Reneker's new allegations are not plausible and that they contradict judicially-noticeable facts. It also contends that there is no indication that the alleged negligence proximately caused the harm that the AmeriFirst Clients assert they suffered.

In *Reneker II* the court's analysis turned on the absence of factual detail in Reneker's first amended complaint to support his claim that the AmeriFirst Clients were unaware of the illegality of their actions because of the negligence of their attorneys. The court held:

> the amended complaint does not allege that,
> absent their lawyers' advice, the AmeriFirst
> Clients were actually unaware that their
> actions were illegal or that they lacked
> knowledge that the representations made during
> securities sales were in fact
> misrepresentations.   The amended complaint
> also fails to allege that Godwin Pappas was
> acting contrary to its clients' directions.
> If these facts have not been pleaded, the
> court may assume their nonexistence.

*Reneker II*, 2009 WL 3365616, at *5.  Reneker has remedied these

deficiencies.  He alleges in his second amended complaint that,

"[a]bsent correct advice and counsel from Offill and Godwin Pappas,

the AmeriFirst Clients were not aware that their actions were

illegal.  The AmeriFirst Clients did not intend to commit fraud or

violate securities laws, and did not know that they had."  2d Am.

Compl. ¶ 27.  In providing details to support this claim, Reneker

avers that Godwin Pappas' representation of the AmeriFirst Clients

"was specifically agreed to include ensuring that the AmeriFirst

Clients complied with all state and federal securities laws in

implementing the AmeriFirst Clients' business plan."  *Id.* at ¶ 17.

The second amended complaint also provides details of the

AmeriFirst Clients' reliance on what they believed to be advice on

how to legally offer securities.  Reneker alleges that, "[a]t the

time, Offill and Godwin Pappas informed the AmeriFirst Clients that

the TSSB had approved an 'exemption' for them regarding certain

registration requirements . . . .  As a result, based on the advice

of Defendants, the AmeriFirst Clients understood and actually

believed they could offer securities as they did because of the 'exemption.'" *Id*. at ¶ 22.   The second amended complaint specifically quotes Bruteyn's testimony that "[he] was told [by Offill and Godwin Pappas] and to the best of [his] knowledge [he] felt [they] had the proper exemption from registration." *Id.* at ¶ 23 (second alteration in original) (internal quotation marks omitted).   Thus Reneker now alleges that the AmeriFirst Clients did not intend to violate the securities laws and that Godwin Pappas was not acting in accordance with its clients' directions by improperly registering the AmeriFirst Clients' securities.   Because the court must accept all of the well-pleaded factual allegations of the second amended complaint as true[2] and view them in the light most favorable to Reneker, the additional details provided in the second amended complaint remedy the concerns the court expressed in *Reneker II*.

C

Godwin Pappas argues that although the new allegations may have sufficient factual specificity, the second amended complaint contradicts judicially-noticeable facts, namely that Bruteyn and

---

[2]The court notes that Bruteyn was recently convicted of nine counts of securities fraud, in violation of § 10(b) of the Securities Exchange Act of 1934, and SEC Rule 10b-5.   *See United States v. Bruteyn*, 3:09-CR-136-M (Lynn, J.).   While discovery may establish that some or all of Reneker's material allegations are not true (not because Reneker is intentionally misrepresenting the truth but because he must rely on the testimony of a convicted felon to establish his claim), the court must accept the allegations as true at this stage of the case.

Bowden have all been found to have knowingly violated securities laws. It maintains this directly contradicts the "facts" alleged in Reneker's second amended complaint.

"Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). Courts may take notice of the judicial record in prior related proceedings. *See Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995) (noting that district court took notice of state court orders in related action); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) ("[W]e find no error in the district court's judicial notice of materials in the court's own files from prior proceedings."); *see also Brown v. Lippard*, 350 Fed. Appx. 879, 883 n.2 (5th Cir. 2009) (per curiam) (citing cases that authorized judicial notice of the record in related cases). But while this court may take judicial notice of facts at any stage of the proceedings, *see* Fed. R. Evid. 201(f), "it should be done sparingly at the pleadings stage. Only in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007). In addition, "Rule 201

- 11 -

authorizes the court to take notice only of 'adjudicative *facts*,' not legal determinations [of another court]." *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) (emphasis in original).  Therefore, a court should not take judicial notice of the specific factual findings of another court.  *Id.* at 830-31.[3] A court also cannot take judicial notice of any fact that may be in dispute.  *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite.").

This court entered various judgments against Bruteyn, Bowden, and the AmeriFirst Clients for securities law violations involving fraud and misrepresentations and ordered those parties to disgorge millions of dollars.  *See supra* note 1.[4]  Godwin Pappas asks the court to judicially notice the specific fact that the AmeriFirst Clients knowingly violated the securities laws—in particular, those laws regulating the proper offering and registration of securities.  They reason that, if the AmeriFirst Clients were found to have willfully violated the law, that fact directly contradicts facts pleaded in the second amended complaint regarding the AmeriFirst Clients' lack of knowledge of the illegality of their

---

[3]Although this court is the "other court" in this case—indeed, the judge is the same—the rule remains the same.

[4]After Godwin Pappas filed this instant motion, Bruteyn was convicted of nine counts of securities fraud in a criminal case tried in this court (Lynn, J.).  *See supra* note 2.

- 12 -

actions.  The court, in its discretion, refuses to take judicial notice of any specific factual finding within the SEC Enforcement Action judgments.  *See* Fed. R. Evid. 201(f) ("Judicial notice *may* be taken[.]") (emphasis added).

Judicial notice is reserved for indisputable facts.  The complexity of the SEC Enforcement Action and of the various judgments entered separately against the individual parties makes taking judicial notice of any element of any securities violation unfair to the parties.[5]  The SEC Enforcement Action, while related to this case, does not involve precisely the same parties and issues, and the court therefore concludes that it cannot apply any particular factual finding from that case to this motion to dismiss.  Further, courts may only properly judicially notice the fact of certain outcomes in related proceedings; the court cannot accept the individual factual findings of another case as evidence of the truth of the matter.  *See Taylor*, 162 F.3d at 830 ("'[C]ourts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these are disputable and usually are disputed.'" (quoting with approval *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997))).  In deciding a motion to dismiss, the court

---

[5]As an illustration of the ambiguity of the factual findings of the court in the SEC Enforcement Action, the court notes Bowden consented to judgment and disgorgement of funds, but he specifically stated in his consent that he did not admit or deny any allegations against him.  *See* Ds. App. 281.

assumes that the well-pleaded factual allegations of the plaintiff's complaint are true, and it should not consider evidence weighing the validity of those claims. Any evidence that Godwin Pappas intends to present to impeach Reneker's factual allegations may be introduced at a later point, in particular, in a motion for summary judgment or at trial.[6]

D

Godwin Pappas also maintains that Reneker has failed in the second amended complaint to establish a causal connection between the negligence alleged and the damages claimed by the AmeriFirst Clients. It argues that by failing to warn the AmeriFirst Clients of the illegality of their actions, Godwin Pappas merely created a condition preceding the injury (i.e., the AmeriFirst Clients' misuse of investor funds). See Askanase v. Fatjo,, 130 F.3d 657, 676 (5th Cir. 1997) ("[A] cause of action is legally insufficient if the defendant's alleged conduct did no more than furnish the condition that made the plaintiff's injury possible."). Godwin Pappas maintains that, whatever its failures, they did not cause the injury. The court held in Reneker II that "[i]t is speculative

---

[6]The court specifically rejects Godwin Pappas' suggestion that affidavits attached to briefs filed in the SEC Enforcement Action can properly be considered at the motion to dismiss stage. See Ds. Mot. to Dis. at 3. These affidavits are evidence that bear on the merits of Reneker's claims. The court in deciding this motion to dismiss must decide only whether Reneker has stated a claim upon which relief can be granted, not whether the evidence supports the claim.

- 14 -

to assume that any change in Godwin Pappas' actions would have altered the actions of the AmeriFirst Clients themselves." *Reneker II*, 2009 WL 3365616, at *6. Godwin Pappas asserts that the modifications Reneker has made to the second amended complaint do not correct the speculative nature of Reneker's assertions regarding causation.

But when the court considers only the well-pleaded facts in the second amended complaint, read in the light most favorable to Reneker, it concludes that Reneker has sufficiently pleaded causation. As noted in *Reneker II*, proximate cause consists of cause in fact and foreseeability. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). "'Cause in fact' means that the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred." *Id.* It is plausible that, if Godwin Pappas had informed the AmeriFirst Clients of the need to properly register their securities or if Godwin Pappas had correctly responded to the TSSB inquiry, as the second amended complaint asserts the AmeriFirst Clients desired, the AmeriFirst Clients might have avoided violating certain securities laws and reduced their liabilities. In *Reneker II* the court held that the first amended complaint did not sufficiently allege that Godwin Pappas' actions were a substantial factor in the AmeriFirst Clients' damages. "As the court has already noted, the amended complaint does not allege that the AmeriFirst Clients were unaware

- 15 -

of the illegality of their actions or that their illegal actions were unintentionally so——the result of negligent advice from their attorneys." *Reneker II*, 2009 WL 3365616, at *6. The second amended complaint remedies these deficiencies, however, by asserting in specific detail that the AmeriFirst Clients were unaware of the illegality of their actions and were honestly seeking legal advice on how to lawfully offer their securities for sale. Assuming, as the court must, that this is true, it is plausible that Godwin Pappas' actions in failing to file the required registration documents and improperly responding to an inquiry from the TSSB, all without the direction or knowledge of the AmeriFirst Clients, caused the AmeriFirst Clients' harm. Again, because the court must accept these well-pleaded facts as true, the court holds that the second amended complaint adequately alleges that the alleged negligence of Godwin Pappas caused the harm to the AmeriFirst Clients of which Reneker complains.

E

Because the court holds that Reneker has alleged sufficient facts to state a claim for negligence——i.e., duty, breach of duty, and proximate cause——the court concludes that Reneker's second amended complaint sufficiently states a claim upon which relief can be granted.

IV

Godwin Pappas contends that, even if the court concludes that Reneker has stated a claim, the second amended complaint must be dismissed because the *in pari delicto* doctrine bars Reneker's suit.

A

"*In pari delicto* is an equitable defense that bars a plaintiff's recovery where the plaintiff itself bears responsibility for the violations he seeks to redress and preclusion of the suit would not impede public policy concerns." *In re IFS Fin. Corp.*, 2007 WL 1308321, at *3 (Bankr. S.D. Tex. May 3, 2007). *In pari delicto*, often referred to in Texas as the unlawful acts doctrine, is an affirmative defense. *See Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008). "In the usual case, [a] court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Employee Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. April 17, 2002) (Fitzwater, J.). But "'[w]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate.'" *Id.* (citing *Kansa Reinsurance Co. v. Congressional Mtg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)). Courts have considered *in pari delicto* as an affirmative defense at the 12(b)(6) stage. *See In re Today's Destiny, Inc.*, 388 B.R. 737, 747 (Bankr. S.D. Tex. 2008) (considering whether facts that would support *in pari*

- 17 -

*delicto* defense had been stated "within the four corners of the Trustee's complaint"); *Fuentes v. Alecio*, 2006 WL 3813780, at *3 (S.D. Tex. Dec. 26, 2006) (granting motion to dismiss on grounds of *in pari delicto*); *but see Rico v. Flores*, 481 F.3d 234, 243-44 (5th Cir. 2007) (noting "multiple versions of the unlawful acts rule" in Texas law, making a 12(b)(6)-type determination for improper joinder purposes impossible).

B

Because Reneker asserts a Texas state-law negligence claim against Godwin Pappas, the court looks to Texas law to determine the requirements of the defense of *in pari delicto*. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83-84 (1994). Under the doctrine of *in pari delicto*, "recovery is barred when the claimant has knowingly and willfully engaged in criminal acts which contributed to the injury alleged to have accrued." *Gladu v. Wallace*, 2003 WL 2010946, at *2 (Tex. App. May 1, 2003, no pet.) (not designated for publication) (citing *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466 (Tex. App. 1994, writ denied); *Dover v. Baker, Brown, Sharman & Parker*, 859 S.W.2d 441 (Tex. App. 1993, no writ)). In *Saks*, a case similar to the present suit, a Texas court held that "a client who contends that his willful criminal act or criminal conviction directly resulted from his attorney's negligent services" cannot sue his attorney for legal malpractice under the doctrine. *Saks*, 880 S.W.2d at 469. But the wrongdoing plaintiff

must be "a knowing and willful party" engaging in "knowing and willful criminal acts." *Id.* (citing *Dover*, 859 S.W.2d at 441, 450-51).[7]  The plaintiffs' claims were barred because they were "convicted of knowingly executing or attempting to execute a scheme to defraud a bank." *Id.* at 470.  In *Dover* a Texas court relied on that fact that Dover was "found to have engaged in the underlying criminal activity *knowingly* and *willingly*" to hold *in pari delicto* barred Dover's claims.  *Dover*, 859 S.W.2d at 450 (emphasis in original).

C

Reneker's second amended complaint does not clearly present all of the elements of an *in pari delicto* affirmative defense on its face.  The face of the pleading does not permit the conclusion that the AmeriFirst Clients violated securities laws "knowingly and willingly."  Thus the court holds that dismissal of Reneker's second amended complaint at the Rule 12(b)(6) stage based on the affirmative defense of *in pari delicto* would be improper.

---

[7]Although many of the formulations of the doctrine stress criminal acts, it is clear the doctrine also applies to noncriminal illegal acts. *See, e.g., Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 328-31 (Tex. App. 1998, pet. denied) (applying *in pari delicto* when illegal act was violation of Texas Railroad Commission shut-in order); *Rodriguez v. Love*, 860 S.W.2d 541, 544 (Tex. App. 1993, no writ) (applying *in pari delicto* when illegal act was violation of civil statute).

D

In addition, *in pari delicto* "is adopted, not for the benefit of either party and not to punish either of them, but for the benefit of the public." *Lewis v. Davis*, 145 Tex. 468, 477 (Tex. 1947). The purpose of the policy is to "deny[] assistance to wrongdoers." *In re Today's Destiny*, 388 B.R. at 749. As such, the courts must consider the "peculiar facts and the equities of the case" to determine whether application of the affirmative defense would further the policy *in pari delicto* is designed to serve. *Lewis*, 145 Tex. at 477 ("[T]he answer usually given [in applying *in pari delicto*] is that which it is thought will better serve public policy."). The court must investigate the evidence presented to consider the possible public policy implications of applying *in pari delicto*. *See In re Today's Destiny*, 388 B.R. at 749 (refusing to grant Rule 12(b)(6) motion because discovery and an evidentiary hearing were needed to weigh *Lewis'* public policy concerns regarding whether bankruptcy trustee's recovery would benefit only innocent creditors or would also benefit wrongdoers). Therefore, before examining the evidence, the court will not dismiss Reneker's second amended complaint based on the affirmative defense of *in pari delicto*.

* * *

For the reasons explained, the court holds that Reneker has stated a negligence claim on which relief can be granted and that

the face of the second amended complaint does not establish that the claim is barred by the affirmative defense of *in pari delicto*. Godwin Pappas' December 18, 2009 motion to dismiss is therefore denied.

**SO ORDERED.**

April 19, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 21 -