IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| D. RONALD RENEKER, SPECIAL RECEIVER FOR AMERIFIRST FUNDING, INC. aka AMERI-FIRST FUNDING, INC. aka AMERI FIRST FUNDING, INC., AMERIFIRST ACCEPTANCE CORP., JEFFREY C. BRUTEYN, DENNIS W. BOWDEN, AMERICAN EAGLE ACCEPTANCE CORP., HESS FINANCIAL CORP., INTERFINANCIAL HOLDINGS CORP., HESS INTERNATIONAL PROPERTIES, LLC, HESS INTERNATIONAL INVESTMENTS, S.A., UNITED FINANCIAL MARKETS, INC. AND GERALD KINGSTON, <br><br>　　　　Plaintiffs <br><br>vs. <br><br>PHILLIP W. OFFILL, JR. AND GODWIN PAPPAS RONQUILLO, LLP, <br><br>　　　　Defendants | § § § § § § § § § § § § § § § § § § § § § §　Civil Action No.3:08-CV-1394-D |

## THIRD AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

　　Plaintiff, D. Ronald Reneker, in his capacity as Special Receiver for Civil Action No. 3:07-CV-1188-D, *SEC v. AmeriFirst Funding, Inc.* Defendants AmeriFirst Funding, Inc. a/k/a Ameri-First Funding, Inc. a/k/a AmeriFirst Funding, Inc., AmeriFirst Acceptance Corp., Jeffrey C. Bruteyn, Dennis W. Bowden, and Relief Defendants American Eagle Acceptance Corp., Hess Financial Corp., InterFinancial Holdings Corp., Hess International Properties, LLC, Hess International Investments, S.A., United Financial Markets, Inc., and Gerald Kingston (hereinafter "Special Receiver"), complains of Defendants Phillip W. Offill and Godwin Pappas Ronquillo, LLP and alleges the following:

**PARTIES**

1.     Plaintiff Special Receiver is the Court-appointed Special Receiver in Civil Action No. 3:07-CV-1188-D. Special Receiver has standing and capacity to file this suit and the correct Defendants are being sued in their correct capacity.

2.     Defendant Phillip W. Offill, Jr. ("Offill") is an individual residing in Collin County, Texas. Offill may be served through his attorneys of record, Richard A. Sayles and Shawn Long of Sayles Werbner, P.C. at 4400 Renaissance Tower, 1201 Elm Street, Dallas, Texas 75270.

3.     Defendant Godwin Pappas Ronquillo, LLP, f/k/a Godwin Pappas Langley Ronquillo, LLP f/k/a Godwin Gruber, LLP ("Godwin Pappas") is a Texas limited liability partnership. Godwin Pappas may be served through its attorneys of record, Richard A. Sayles and Shawn Long of Sayles Werbner, P.C. at 4400 Renaissance Tower, 1201 Elm Street, Dallas, Texas 75270.

**JURISDICTION AND VENUE**

4.     On July 2, 2007, in Civil Action No. 3:07-CV-1188-D, *SEC v. AmeriFirst Funding, Inc.* ("SEC action"), this Court entered an Order Appointing Temporary Receiver (the "Original Receivership Order") pursuant to which the Court took exclusive jurisdiction and possession of the "assets, monies, securities, claims in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated" then belonging to AmeriFirst Funding, Inc., AmeriFirst Acceptance Corp., American Eagle Acceptance Corporation, and others (hereinafter collectively "Receivership Assets"), and appointed William D. Brown as Receiver for the Receivership Assets. On August 2, 2007, this Court entered an Amended Order Appointing Temporary Receiver (the "Amended Receivership Order"), which

added InterFinancial Holdings Corp., Hess International Properties, LLC, Hess International Investments, S.A., United Financial Markets, Inc. and Gerald Kingston as additional relief defendants.

5.  In paragraph 3 of both the Receivership Order and the Amended Receivership Order, all defendants and relief defendants in Cause Number 3:07-CV-1188-D, as well as all persons in active concert or participation with such defendants or relief defendants who received actual notice of the orders, were directed to "promptly deliver to the Receiver all Receivership Assets in the possession or under the control of any one or more of them."

6.  In addition, the Amended Receivership Order provides that any action to determine disputes relating to Receivership Assets or whether an asset is an asset of the Receivership shall be filed in this Court. The claims asserted in this action are Receivership Assets.

7.  On June 5, 2008, this Court entered an Order (so styled) in which the Court appoint D. Ronald Reneker as Special Receiver to evaluate and prosecute any claims of the Receivership against Offill and Godwin Pappas. Thus, this Court has ancillary jurisdiction over this claim brought by Special Receiver against Offill and Godwin Pappas pursuant to his receivership duties.

## FACTUAL BACKGROUND[1]

---

[1] Special Receiver filed his Complaint against Offill and Godwin Pappas (collectively "Defendants") on August 11, 2008. On October 7, 2008, Offill and Godwin Pappas filed their Motion to Dismiss Under Rule 12(b) And Brief In Support. On March 26, 2009, this Court granted Defendants' Motion to Dismiss and granted Special Receiver thirty days to file an amended complaint. On April 27, 2009, Special Receiver filed his First Amended Complaint against Defendants. On May 22, 2009, Defendants filed their Motion to Dismiss Under Rule 12(b) and Brief in Support. On October 20, 2009, this Court granted Defendants' Motion to Dismiss Special Receiver's First Amended Complaint and granted Special Receiver thirty days to file an amended complaint. On November 19, 2009, Special Receiver filed his Second Amended Complaint and Defendants filed their Motion to Dismiss Second Amended Complaint and Answer to Second Amended Complaint on December 19, 2009. On April 19, 2010, this Court denied Defendants' Motion to Dismiss Second Amended Complaint.

8. Special Receiver's claim of legal malpractice by Offill and Godwin Pappas arises from their failure to properly advise and assist certain of their corporate clients, namely American Eagle Acceptance Corporation ("American Eagle"), AmeriFirst Funding, Inc. ("AmeriFirst Funding"), and AmeriFirst Acceptance Corporation ("AmeriFirst Acceptance") (hereinafter collectively referred to as the "AmeriFirst Clients"), in offering securities for sale to the public.

9. The President and Chief Operating Officer of American Eagle is Dennis W. Bowden ("Bowden"). He is also the Chief Executive Officer, Chief Operations Officer, Director, and sole shareholder of AmeriFirst Funding and the President, Director and Chief Operating Officer of AmeriFirst Acceptance. An individual with no college degree, Bowden is a legitimate and previously successful businessman who has been in the automobile sales and financing business since 1978.

10. In fact, before meeting Offill and Godwin Pappas, Bowden had been in the automobile business most of his adult life, having trained under and worked with his father for approximately twenty-five years, much of it at American Eagle.

11. In early 2005, Bowden was seeking to expand and grow his business, and in connection therewith, to raise capital to finance that expansion. To facilitate the expansion, Bowden, with the assistance of Jeffrey C. Bruteyn ("Bruteyn") and Defendants, developed a business plan to sell securities that would allow investors to invest in high interest, lucrative car notes that the AmeriFirst Clients owned and wanted to purchase more of.

12. According to the plan, after payment of commissions and costs, ninety-two percent of the proceeds from the AmeriFirst Clients' offering would be placed into accounts on which Bowden was the sole signatory and over which he maintained complete control. In turn,

these funds were to be used to buy car notes and otherwise conservatively invested for the benefit of investors.

13.     In the course of implementing the business plan, Bowden asked Bruteyn to assist in his efforts to raise capital for Bowden's businesses. Bowden subsequently made Bruteyn the Vice President and Managing Director of both AmeriFirst Funding and AmeriFirst Acceptance. However, as Bruteyn has testified under oath, he was not an owner of any of the AmeriFirst or related entities, nor was he involved in the day-to-day operations of the companies: "I don't own, nor do I operate, nor have I ever owned or operated, nor do I own any stock in any Amerifirst company. I raised money for Dennis Bowden and his companies . . . ."

14.     Thus, the sources of income for the AmeriFirst Clients were to be collections, sales, and investor checks.[2] Since the institution of the Receivership Subsequent it has become clear that income from each of these sources were properly deposited into appropriate bank accounts in the name of AmeriFirst Funding. Moreover, it has also become clear that these accounts were conscientiously protected and never accessed for personal gain by Bowden or anyone else. As part of the system of checks and balances implemented by Bowden in the AmeriFirst Clients business model, Bowden was not only the sole signatory on all the AmeriFirst Funding bank accounts such that no other person at any time had the authority to transfer funds from these accounts, Bowden personally made sure "that no funds could be accessed or transferred without my authorization." Bowden also had sole authority over and was the sole signatory on each of the AmeriFirst Acceptance accounts. As such, it was Bowden who controlled the AmeriFirst Clients and it was always his intent to do so legitimately.

---

[2] "Collections" refers to the financing aspect of the business and "sales" encompass automobile and car note sales. "Investor checks" are the proceeds from the sale of the notes described herein.

15. Among others who shared this intent and assisted Bowden were James Coker (Treasure and Director of AmeriFirst Funding and AmeriFirst Acceptance), Robert Clark (Secretary and Director of AmeriFirst Acceptance), David Cain (Director of AmeriFirst Acceptance), Edward Roush (Registered Agent of American Eagle), and Gerald Kingston (Director of AmeriFirst Funding and AmeriFirst Acceptance) (collectively herein referred to as "Other Principals").

16. On or about June 2005, Offill and Godwin Pappas were engaged to assist with the expansion plan. At the time, Offill was a well-known securities attorney with an excellent reputation and had formerly worked for the Securities and Exchange Commission ("SEC"). Similarly, Godwin Pappas was a well-known law firm with an excellent reputation, composed of other attorneys working under Offill's direction on behalf of Godwin Pappas (collectively, the "Other Godwin Pappas Attorneys") who themselves had good reputations.[3]

17. As part of their legal representation, Offill and Godwin Pappas agreed to provide assistance and advice to Bowden, Bruteyn, and the AmeriFirst Clients in all aspects of properly preparing and legally offering, without illegally advertising or soliciting, securities for sale to the public. Defendants' representation of the AmeriFirst Clients was specifically agreed to include ensuring that the AmeriFirst Clients complied with all state and federal securities laws in implementing the AmeriFirst Clients' business plan, which called for the creation and offering of securities. In addition, as part of their service to the AmeriFirst Clients, Offill and Godwin Pappas agreed to advise Bowden, Bruteyn, and the AmeriFirst Clients on the various options available for raising capital through the offering of securities.

---

[3] At all times material hereto, Offill was an attorney licensed to practice law in the State of Texas and Godwin Pappas was a law firm. From the date of its formation and at all relevant times, Offill was a partner with Godwin Pappas, acting on behalf of himself and Godwin Pappas with respect to the matters that are the subject of this action.

18.     After considerable discussion, the AmeriFirst Clients and Defendants developed an offering which Bowden, Bruteyn, and the AmeriFirst Clients believed would be acceptable to regulatory authorities. In fact, the AmeriFirst Clients believed, based on the counsel and advice of Defendants, that the Texas State Securities Board ("TSSB") had advised specifically that the format proposed by the Defendants was acceptable.

19.     As lay persons, neither Bowden, the Other Principals, or Bruteyn for that matter, were familiar with the registration rules and regulations under federal or state securities laws. It was for this reason they sought legal assistance in the first place. As Bowden has testified:

> Q. (BY MR. NORRIS) The question was did you ever seek legal advice concerning whether -- or what the prerequisites were for offering and selling -- the legal prerequisites for offering and selling these secured notes?
>
> A. Yes.
>
> Q. From whom?
>
> A. Phil Offill.

20.     As with other entities that typically retain counsel to assist with securities offerings, the AmeriFirst Clients properly entrusted the job of ensuring compliance with all necessary filings and procedures, to the extent they existed, to Offill and Godwin Pappas. As reasonable and prudent attorneys engaged in the capital markets and securities offerings practice should, Offill and Godwin Pappas understood that the AmeriFirst Clients expected and would rely on Defendants to ensure that the AmeriFirst Clients complied with all applicable securities laws. As reasonable and prudent attorneys, Defendants knew or should have known that the AmeriFirst Clients were not familiar with all of the intricacies associated with offering securities,

7

and that the AmeriFirst Clients would rely on their advice with regard to the appropriate implementation of the business plan.

21.     As detailed below, however, despite initially creating the appearance they had complied, Offill and Godwin Pappas failed to properly perform their engagement. Among other things, Defendants initially created and approved for filing a disclosure statement with Pink OTC Markets, Inc., an electronic quotation and trading system in the over-the-counter securities market. In February 2006, they prepared and filed the Certificate of Formation, Bylaws, and Organizational Resolutions for AmeriFirst Acceptance. In addition, the Other Godwin Pappas Attorneys also prepared various other documents, such as a Servicing Agreement, a Sale and Servicing Agreement, a Term Sheet, a Subsequent Transfer Agreement, a Subscription Agreement, a Suitability Questionnaire, a Security Agreement, and a Promissory Note. Thereafter, in furtherance of the engagement, in March 2006, Offill and Godwin Pappas prepared and filed additional documents which they indicated to the AmeriFirst Clients were required for the purpose of offering securities, including a Form SS-4.

22.     Significantly, Offill and Godwin Pappas also prepared an offering book and advertisement which was sent to the TSSB for review and approval. At the time, Offill and Godwin Pappas informed the AmeriFirst Clients that the TSSB had approved an "exemption" for them regarding certain registration requirements based on an advertisement the AmeriFirst Clients put together with the assistance and approval of Defendants. As a result, based on the advice of Defendants, the AmeriFirst Clients understood and actually believed they could offer securities as they did because of the "exemption."

23.     As Bruteyn testified, "[o]ur attorneys registered these notes and were approved to sell . . ." More specifically, "I was told [by Offill and Godwin Pappas] and to the best of my

knowledge I felt we had the proper exemption from registration . . . ." Bowden himself has testified "[i]t's my understanding, yes, that we were operating under an exemption."

24. Thus, pursuant to the advice and counsel of Offill and Godwin Pappas, the AmeriFirst Clients offered securities for sale to the public believing they were doing so in compliance with state and federal securities laws. They were, however, not in compliance.

25. Among other things, despite Defendants' knowledge that the AmeriFirst Clients planned to offer securities for sale to the public, including outside of Texas, Defendants wholly failed to properly inquire, investigate, assist, or advise the AmeriFirst Clients in the proper utilization and actual filing of necessary documents for interstate sales. Moreover, Defendants failed to advise the AmeriFirst Clients of the limits of the registration exemption the AmeriFirst Clients believed to be applicable to the securities. As a result, at no time did AmeriFirst Acceptance or AmeriFirst Funding use and/or file the required offering documents prepared by Offill and/or the Other Godwin Pappas Attorneys in the manner in which they should have filed and/or used them so as to properly offer the securities for sale to the public.

26. Instead, the securities were offered on an interstate basis on a Web page known as www.amerifirstcorp.com and were accompanied by representations that they were secured by collateral. The AmeriFirst Clients believed, based on the advice and counsel of Defendants, that use of the Web site was appropriate and that its content was true and accurate. In fact, Offill and Godwin Pappas specifically told the AmeriFirst Clients that the TSSB had approved the use of the Web site and its content. Here again, however, the legal advice was inaccurate and resulted in the AmeriFirst Clients violating registration and anti-fraud provisions of numerous state and federal securities laws.

27. Absent correct advice and counsel from Offill and Godwin Pappas, the AmeriFirst Clients were not aware that their actions were illegal. The AmeriFirst Clients did not intend to commit fraud or violate securities laws, and did not know that they had. Among other things, Offill and Godwin Pappas negligently advised the AmeriFirst Clients that because of the "exemption" the securities did not require the use of the offering documents referenced above, were not required to be registered with the SEC, and could be sold to investors outside Texas. This improper advice was contrary to the AmeriFirst Clients' expressed request for advice and assistance regarding the proper procedure for offering securities. The AmeriFirst Clients justifiably relied upon Defendants for prudent legal advice, and Offill and Godwin Pappas failed to provide it.

28. This failure undermined the AmeriFirst Clients' goal to expand their business by legally providing an investment opportunity in the form of a security that would benefit the AmeriFirst Clients by raising capital. The AmeriFirst Clients engaged Offill and Godwin Pappas to assist and counsel them in implementing and achieving this objective, and as outlined herein, Offill and Godwin Pappas failed to properly instruct, advise, and assist the AmeriFirst Clients in offering the securities as requested.

29. This failure was negligent and proximately caused the AmeriFirst Clients to incur liabilities to third parties, which liabilities were either increased or would not have been incurred in the first place. If Offill and Godwin Pappas had advised, inquired, investigated, or otherwise assisted the AmeriFirst Clients in the proper filing and/or use of the documents they did create, as reasonable and prudent attorneys would and should have, the AmeriFirst Clients would have ceased violating state and federal securities laws. The AmeriFirst Clients, through Bowden in particular, would have heeded the proper advice and ceased the illegal activities, thereby

reducing liabilities to third parties and enhancing their ability to pursue the legitimate goals of the AmeriFirst Clients' overall business plan. Because Defendants did not properly advise the AmeriFirst Clients, however, the AmeriFirst Clients incurred liabilities to third parties, which liabilities were either increased or would not have been incurred in the first place if Offill and Godwin Pappas had performed as reasonable and prudent attorneys would and should have.

30. Certainly, the AmeriFirst Clients would not have offered the securities in the manner in which they did, if they had been aware of the illegality of such an offering. As Bruteyn testified, "I wish that we had -- that I had known about some of the limitations on what I felt was a proper exemption."

31. In addition, Offill's and Godwin Pappas' failure to adequately review the content of the Web site and to properly advise the AmeriFirst Clients of the legality of the content and the use thereof in connection with the offering was negligent, and this negligence too proximately caused the AmeriFirst Clients to incur liabilities to third parties, which liabilities were either increased or would not have been incurred in the first place.

32. Moreover, a reasonable and prudent attorney would have known and should have known that any neglect in the legal representation of a securities offering would cause the AmeriFirst Clients to incur new or additional liabilities to third parties.

33. As stated above, the AmeriFirst Clients were not aware that their actions were illegal. Had the AmeriFirst Clients been advised of their illegal conduct, they would have ceased the offerings and endeavored to rectify the securities laws violations. Because the AmeriFirst Clients were actively seeking legal advice regarding the proper legal procedures for offering securities, Defendants did more than merely furnish a condition which allowed an illegal activity. By failing to provide proper legal advice and assistance as agreed, Offill and Godwin

Pappas caused the illegal activity. Additionally, because Defendants were aware of the AmeriFirst Clients' intent to offer securities and of the general terms of their business plan, it was foreseeable that damages would be caused by Defendants' failure to notify the AmeriFirst Clients of the illegality of their acts.

34. The AmeriFirst Clients, and Bowden in particular, did not seek out the highly regarded Offill and Godwin Pappas because they wanted to commit fraud or violate securities laws. Similarly, they did not set out to subject themselves to substantial penalties or face incarceration. The offerings were designed to raise capital for the financing and sale of automobiles, the core of Bowden's business. Offill and Godwin Pappas assisted with the development of the plan and securities and were aware of the role of the offering, but failed to advise the AmeriFirst Clients how to incorporate it properly.

35. In addition, on numerous occasions following initiation of the offering, Offill and Godwin Pappas continued to fail to perform their engagement as reasonable and prudent attorneys would have. In August 2006, the illegal offering of the securities came to the attention of the TSSB, and the AmeriFirst Clients received an initial verbal inquiry from the TSSB. In response, the AmeriFirst Clients requested that Offill and Godwin Pappas, in furtherance of their engagement, respond to the TSSB on their behalf, and Offill and Godwin Pappas agreed to do so. On August 14, 2006, the initial inquiry was followed by a formal written inquiry addressed to Offill requesting "what exemption from registration is being relied upon with respect to this offering" and a response within ten (10) days.

36. At that time, Offill again advised the AmeriFirst Clients specifically that they were in compliance with all applicable securities laws. As Bruteyn testified, the AmeriFirst

Clients never spoke with the TSSB because "[t]that's what we paid the attorneys [Offill and Godwin Pappas] to do."

37. By virtue of agreeing to provide representation and proper legal advice regarding compliance, Offill and Godwin Pappas incurred a duty to fully and fairly respond to the TSSB inquiry, as reasonable and prudent attorneys would and should have done. Under the circumstances then existing, a full and fair response required an investigation by Defendants of the issues presented by the TSSB. Offill and Godwin Pappas failed to fully, fairly, or reasonably investigate the issues and/or failed to properly utilize the information they did have. Had they performed their engagement as reasonable and prudent attorneys should and would have, Defendants would have discovered the AmeriFirst Clients had offered the securities improperly and were engaged in violations of state and federal securities laws. Because they were hired for the express purpose of providing this legal service regarding compliance, Offill and Godwin Pappas had a duty to advise the AmeriFirst Clients of the illegality of their actions and they failed to do so.

38. On September 11, 2006, more than ten days after the written inquiry from the TSSB and despite his obligation to do otherwise, Offill negligently and improperly replied to the TSSB on behalf of the AmeriFirst Clients as follows:

- the securities were secured by pledges of vendor's liens on automobile purchase notes, automobiles, certificates of deposit, and cash;

- the AmeriFirst Clients had not utilized promotional materials or advertising;

- the securities were offered to Texas residents only through the AmeriFirst Clients' officers and directors, none of whom were paid any manner of additional compensation;

- Colonial First Advisors was the investment advisor for the CSDO offering, and it was located at 4514 Cole Ave, Suite 600, Highland Park, Texas 75202;

- the AmeriFirst Clients had not offered or sold any securities through any internet Web site; and

- AmeriFirst Funding had $23.5 million in assets.

39. Among other things, had Offill and Godwin Pappas properly performed their engagement, they would have known that these statements were false. Specifically, a reasonable investigation would have revealed, and Offill and Godwin Pappas should have known, that:

- the securities were unsecured;

- sales materials regarding the securities were being distributed;

- commissions were being paid to various companies and individuals who sold the securities;

- advertising was taking place on the internet;

- Colonial First Advisors was located in Florida, not Texas; and

- 240 persons or entities had invested in the securities, 140 in Texas and 100 in Florida.

40. Thus, Offill and Godwin Pappas breached their duty to the AmeriFirst Clients and were negligent for failing to conduct an investigation before replying to the TSSB, in giving false information to the TSSB, and failing to advise the AmeriFirst Clients of their illegal actions.

41. Moreover, the AmeriFirst Clients were not aware of the misrepresentations. Defendants never advised the AmeriFirst Clients that the information provided to the TSSB was inaccurate and false. The AmeriFirst Clients did not engage Offill and Godwin Pappas to make false statements to the TSSB or any regulator entity. Contrary to the AmeriFirst Clients' directives, Offill and Godwin Pappas improperly responded to the TSSB; gave the TSSB false information; and failed to notify the AmeriFirst Clients of the deficiencies and irregularities in

their offering. Thus, Offill and Godwin Pappas negligently prolonged and perpetuated the improper offering.

42.     This negligence caused the AmeriFirst Clients to incur additional and unnecessary liabilities to third persons and was a proximate cause of foreseeable damages to the AmeriFirst Clients. In particular, had Offill and Godwin Pappas performed as they should have with regard to the TSSB inquiry, the AmeriFirst Clients would have stopped violating the law and would not have incurred the additional liability to third parties that they incurred after September 2006.

43.     In addition, it is evident that Offill and Godwin Pappas must have known that in fact some of the representations made to the TSSB were false and failed to advise the AmeriFirst Clients of the misrepresentations. Defendants' awareness is demonstrated through a comparison of the statements made by Offill to the TSSB in September 2006 and the statements made by Offill to counsel for Lloyds of London ("Lloyds") in a letter dated November 30, 2006. In the letter to Lloyds, Offill represented, among other things, that AmeriFirst Funding had sold securities in both Texas and Florida.

44.     Offill's and Godwin Pappas' engagement included not only responding properly to the TSSB inquiry, but also advising the AmeriFirst Clients of any false information which may have been provided on their behalf to the regulatory agency. Having not advised the AmeriFirst Clients of the misrepresentations provided to the TSSB, Defendants should have at least corrected the false information provided to the TSSB, and thus properly responded as the AmeriFirst Clients requested. In failing to do so, Defendants' actions and omissions again created and increased the AmeriFirst Clients' liabilities to third parties.

45.     Moreover, around November 2006, Offill became aware that the Florida State Securities Board was also making inquiries as to the activities of the AmeriFirst Clients

regarding the offerings. As a result, at least as early as November 2006, Defendants knew or should have known that their clients were not entitled to rely upon any intrastate exemption from state and federal securities laws which regulate public offerings of securities, and that Offill's statement to the TSSB that the securities were sold only in Texas was false. At that point, reasonable and prudent attorneys would have corrected the misrepresentations, advised their clients that they were violating state and federal securities laws, and advised that they must stop their illegal conduct. Defendants did none of these. If Offill and Godwin Pappas had done so, the offering would have stopped. This failure was negligent and proximately damaged the AmeriFirst Clients by exposing them to increased and unnecessary liabilities.

46. On May 5, 2008, in the SEC action, this Court entered a memorandum opinion finding that the AmeriFirst Clients 1) "never filed a registration statement for the SDOs under § 5 of the Securities Act [of 1933]" and thus "sold these SDOs to the public through a general solicitation" in violation of securities laws, specifically to Florida investors; and 2) "knowingly, or with severe recklessness regarding the truth, made misrepresentations and omitted material facts in connection with the offer or sale of the SDOs, in violation" of securities laws.

47. On April 30, 2009, this Court entered an Agreed Final Judgment Of Permanent Injunction And Other Equitable Relief Against Dennis W. Bowden (Document 383) in the SEC action in which the Court ordered that Bruteyn and all three of AmeriFirst Clients are jointly and severally liable with Bowden for amounts illegally obtained as a result of securities laws violations.

48. Although Bowden, Bruteyn, and the AmeriFirst Clients were found to be jointly and severally liable, Bowden and the AmeriFirst Clients were unaware of the illegality of their actions and/or that the representations made during securities sales were in fact

16

misrepresentations. Similarly, Bruteyn and the Other Principals were also unaware of the illegality of the AmeriFirst Clients' actions and/or the misrepresentations. As alleged above, Bruteyn's actual participation in the AmeriFirst Clients was only to assist in raising money for the companies and his involvement in the day-to-day business was so limited that he did not have access to information regarding the AmeriFirst Clients' various investors and invested amounts. As he has testified, "I don't have anything to do with Amerifirst, so I couldn't really sign anything . . . I've never solicited this investment to any outside investor. I've never run an ad. I've never approved any advertisement and did not know of any broker that was running any type of advertisement . . . ." In fact, the AmeriFirst Clients were unaware of any advertising that was targeted at the public until the Florida State Securities Board called Bruteyn in November 2006, and inquired about advertising for the securities in Florida, at which point Bruteyn contacted each investor concerned and offered a full return of their respective investments.

49.     The Other Principals, none of which were named in the SEC action, were similarly unaware of the illegality of the offering and none of them were found to be in violation of securities laws. Thus, none of the Other Principals have been ordered to disgorge monies to the receivership. In addition, although the SEC named Kingston (Director of AmeriFirst Funding and AmeriFirst Acceptance) as a relief defendant, on June 26, 2009 the SEC filed a status report in the underlying suit which stated that the SEC finalized settlement with Kingston.

50.     For the AmeriFirst Clients, Bowden, Bruteyn, and the Other Principals, the job of ensuring securities laws compliance was assigned to Offill and Godwin Pappas who were entrusted the task of preparing the offering in compliance with securities laws.

51.     As alleged herein, however, Offill and Godwin Pappas continually acted contrary to the AmeriFirst Clients' directions. The AmeriFirst Clients directed Offill and Godwin Pappas

to assist with and ensure that the securities offering was in compliance with securities laws. Defendants assured the AmeriFirst Clients that the securities did not require registration with the SEC because the notes were exempt from registration. Defendants also failed to adequately respond to the TSSB and to notify the AmeriFirst Clients of misrepresentations made on their behalf to the TSSB. Generally, Offill and Godwin Pappas failed to adequately assist and advise the AmeriFirst Clients with their securities offerings and to advise them of the illegality of their actions.

## CAUSE OF ACTION

### Negligence

52. Special Receiver incorporates by reference, as if fully set forth, the allegations contained in the foregoing Paragraphs 1-51.

53. Offill and Godwin Pappas owed the AmeriFirst Clients a duty to exercise the degree of care, skill, and diligence that attorneys of ordinary skill and knowledge commonly possess and breached that duty by engaging in the acts and omissions of negligence alleged above. In that regard, Offill and Godwin Pappas, among other things, 1) neglected the various matters the AmeriFirst Clients entrusted to Defendants; 2) frequently failed to carry out their obligations owed to the AmeriFirst Clients; 3) did not promptly make reasonable efforts under the circumstances to dissuade the client from committing illegal acts; 4) knowingly made false statements of material fact to the TSSB on behalf of the AmeriFirst Clients without the knowledge of the AmeriFirst Clients; and 5) did not make an effort to persuade the AmeriFirst Clients to allow Defendants to correct the misrepresentations made to the TSSB. Each negligent act or omission was a proximate cause of damages to the AmeriFirst Clients. In this regard, the AmeriFirst Clients were proximately damaged by the negligence of Offill and Godwin Pappas to

the extent, among other things, that their liability to third parties was increased or the AmeriFirst Clients became liable to third parties when they otherwise would not have been. In addition, the AmeriFirst Clients were proximately damaged by the negligence of Offill and Godwin Pappas because the AmeriFirst Clients were not able to fully or properly implement their business plan which, among other things, resulted in significant loss of earnings, loss of goodwill, lost profits, and decrease in the market value of the AmeriFirst Clients. Such damages were reasonably foreseeable to a lawyer of ordinary prudence.

54. All conditions precedent have been performed or have occurred.

## PRAYER

**WHEREFORE**, Plaintiff Special Receiver D. Ronald Reneker prays that Defendants Phillip W. Offill, Jr. and Godwin Pappas Ronquillo, LLP be cited to appear and answer in this action and that upon final hearing,

(1) Plaintiff recover from Defendants, jointly and severally, monetary damages as described herein and all fees paid by the AmeriFirst Clients to Defendants in connection with the matters that are the subject of this action;

(2) Plaintiff recover from Defendants, jointly and severally, pre- judgment and post-judgment interest as allowed by law;

(3) Plaintiff recover from Defendants, jointly and severally, costs of court; and

(3) Plaintiff recover from Defendants, jointly and severally, such other and further relief, whether special or general, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

By: /s/William J. Eggleston
William J. Eggleston

        Texas Bar No. 06483500
        Raymond L. Gregory II
        Texas Bar No. 08438275
        John Michael Raborn
        Texas Bar No. 24057364

        EGGLESSTON & BRISCOE, LLP
        4800 Three Allen Center
        333 Clay Street
        Houston, Texas 77002
        Telephone: (713) 659-5100
        Fax: (713) 951-9920

        ATTORNEYS FOR SPECIAL RECEIVER
        D. RONALD RENEKER, PLAINTIFF

## **CERTIFICATE OF SERVICE**

    I certify that on November 17, 2010 all counsel of record that have consented to electronic service are being served a copy of Special Receiver's Third Amended Complaint electronically via the CM/ECF filing system.

        /s/John Michael Raborn
        John Michael Raborn