IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D. RONALD RENEKER, SPECIAL RECEIVER FOR AMERIFIRST FUNDING, INC., et al., | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:08-CV-1394-D |
| VS. | § | |
| | § | |
| PHILLIP W. OFFILL, JR., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this legal malpractice action brought by a court-appointed special receiver on behalf of clients of a law firm and former firm partner, the court must decide on defendants' motion for summary judgment whether the receiver has standing, whether a reasonable trier of fact could find that the law firm breached a duty to the clients or that such breach proximately caused the clients' damages, and whether the claim is barred by one or more affirmative defenses. Some of these questions turn on the scope of judicial notice that the court can take of related criminal and civil proceedings; whether the lawsuit is barred based on the affirmative defense of issue preclusion by the criminal conviction of one of the principals of the clients in whose shoes the special receiver stands or by a decision in a civil enforcement action regarding such principal; whether the special receiver is bound by judicial estoppel to statements made by a related court-appointed receiver; and whether the special receiver is precluded from recovering based on the affirmative defense of *in pari delicto*. The parties

also present several related motions. For the reasons that follow, the court grants defendants'
summary judgment motion in part and denies it in part, decides the related motions as set
forth below, and grants defendants leave to file a second motion for summary judgment.

## I

## A

This is a legal malpractice action by plaintiff D. Ronald Reneker, Esquire
("Reneker")—court-appointed special receiver acting on behalf of American Eagle
Acceptance Corp. ("American Eagle"), AmeriFirst Funding, Inc. a/k/a Ameri-First Funding,
Inc. a/k/a Ameri First Funding, Inc. ("AmeriFirst Funding"), and AmeriFirst Acceptance
Corp. ("AmeriFirst Acceptance") (collectively, the "AmeriFirst Clients")—against
defendants Phillip W. Offill, Jr. ("Offill") and Godwin Pappas Ronquillo, LLP, f/k/a Godwin
Pappas Langley Ronquillo, LLP f/k/a Godwin Gruber, LLP ("Godwin Pappas") (collectively,
"Godwin Pappas," unless the context otherwise requires).[1]   The AmeriFirst Clients sold
"Collateral Secured Debt Obligation Notes" ("CSDOs") to the public and, in doing so,
violated the registration and antifraud provisions of various state and federal securities laws.

---

[1]In recounting the factual background, the court summarizes the evidence in the light
most favorable to Reneker as the summary judgment nonmovant and draws all reasonable
inferences in his favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869,
870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins.
Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).  Because Reneker has not
presented evidence in support of many factual allegations, the court largely summarizes the
unsworn allegations in Reneker's fourth amended complaint and briefs.  In doing so, the
court does not suggest that all summarized factual allegations are supported by summary
judgment evidence that is sufficient to raise a genuine issue of material fact.

The Securities and Exchange Commission ("SEC") brought an enforcement action, *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D (N.D. Tex. filed July 2, 2007) ("SEC Enforcement Action"), and obtained judgments under §§ 5(a), 5(c), and 17(a) of the Securities Act of 1933 against several defendants, including AmeriFirst Funding, AmeriFirst Acceptance, Jeffrey C. Bruteyn ("Bruteyn"), and Dennis W. Bowden ("Bowden"), and several relief defendants, including American Eagle.[2]   The court appointed William D. Brown ("Brown") as temporary receiver for the SEC Enforcement Action ("SEC Receivership") and later amended the receivership order to add other parties.   The amended order "authorized [Brown] to take and have possession of the Receivership Assets and Receivership Records" and to make "ordinary and necessary payments, distributions, and disbursements as he deems advisable or proper."   Am. Receivership Order ¶¶ 2, 7.   In 2008 the court appointed Reneker as special receiver for the limited purpose of making decisions concerning the filing, prosecution, and ultimate disposition of any lawsuit that included Godwin Pappas as a defendant.   Reneker, in turn, brought this lawsuit on behalf of the AmeriFirst Clients against Offill and Godwin Pappas, alleging a claim for professional negligence on the ground that Godwin Pappas was negligent in failing to properly advise and assist the AmeriFirst Clients in offering securities for sale to the public, which resulted in their incurring liabilities to third parties or incurring increased liabilities to third parties.

---

[2]The court entered final judgments against the following defendants and relief defendants on the dates shown: AmeriFirst Funding (September 22, 2008); AmeriFirst Acceptance (September 22, 2008); Bruteyn (May 5, 2008); Bowden (March 30, 2009); and American Eagle (September 22, 2008).

Bowden served as President and Chief Operating Officer of American Eagle; Chief Executive Officer, Chief Operations Officer, Director, and sole shareholder of AmeriFirst Funding; and President, Director, and Chief Operating Officer of AmeriFirst Acceptance. In 2005 Bowden contacted Bruteyn seeking assistance in raising capital to expand his business.  It is undisputed that Bruteyn was or became the Managing Director of both AmeriFirst Funding and AmeriFirst Acceptance, and that he also served as Vice President of AmeriFirst Acceptance.  Bruteyn contacted Godwin Pappas "to obtain their assistance in the development of a plan to expand the on-going sale of [CSDOs] that would raise more capital by allowing more investors to invest in high interest, lucrative car notes that the AmeriFirst Clients owned and wanted to purchase more of."  4th Am. Compl. ¶ 11.

Offill was a partner of the Godwin Pappas law firm.[3]  In December 2005 Godwin Pappas met with representatives of the AmeriFirst Clients.  According to Reneker's fourth amended complaint, the firm "agreed to provide assistance and advice to the AmeriFirst Clients in all aspects of properly preparing and legally offering . . . the CSDOs . . . for sale to the public."  Id. at ¶ 15.  This included advising the AmeriFirst Clients on their compliance with state and federal law and various options for raising capital.

Reneker alleges that Godwin Pappas breached its duty to properly advise and assist the AmeriFirst Clients in offering the CSDOs for sale to the public, resulting in violations of the registration and antifraud provisions of various state and federal laws.  In particular,

---

[3]Offill is a former lawyer who was convicted in an unrelated criminal case.

Reneker asserts that, although Godwin Pappas recognized the deficiencies in the CSDOs' offering documents and procedures, it failed (1) to properly bring these deficiencies to the AmeriFirst Clients' attention and advise them to refrain from selling CSDOs, instead informing them that they were properly operating under an exemption; (2) to investigate the initial verbal and formal written inquiry sent by the Texas State Securities Board ("TSSB") to the AmeriFirst Clients, resulting in their failure to advise the AmeriFirst Clients of their lack of compliance, affirmation that they were in compliance with the securities laws, and improper and/or misleading response to the TSSB; and (3) to correct the misrepresentations made to the TSSB after learning that the Florida State Securities Board had inquired about the AmeriFirst Clients' offerings. Reneker maintains that "the AmeriFirst Clients would not have offered the securities in the manner in which they did[] if they had been aware of the illegality of such an offering," and that they "would have ceased violating state and federal securities laws" if Godwin Pappas had properly advised them of their illegal conduct, "thereby reducing liabilities to third parties." *Id.* at ¶¶ 26-27; *see also, e.g., id.* at ¶¶ 24 and 29. According to Reneker, by not advising the AmeriFirst Clients of their illegal conduct, Godwin Pappas "negligently prolonged and perpetuated the improper offering of securities by the AmeriFirst Clients," causing "the AmeriFirst Clients to incur additional and unnecessary liabilities to third persons." *Id.* at ¶¶ 39-40.

### B

The court previously dismissed this action on the pleadings in *Reneker v. Offill*, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.) ("*Reneker I*"). It held, *inter alia*,

that Reneker lacked standing to pursue the professional negligence claim because he only alleged an injury suffered by investors—the AmeriFirst Clients' liability owed to investors and left unsatisfied. *Id.* at *6. The court also dismissed Reneker's second claim for breach of fiduciary duty. *Id.* at *10.

Reneker then filed an amended complaint. In *Reneker v. Offill*, 2009 WL 3365616 (N.D. Tex. Oct. 20, 2009) (Fitzwater, C.J.) ("*Reneker II*"), the court held, *inter alia*, that Reneker had standing to bring the professional negligence claim, as amended. *Id.* at *3. The court dismissed the claim—which alleged that Godwin Pappas had a duty to assist the AmeriFirst Clients in legally offering securities for sale—because Reneker failed to plausibly allege that Godwin Pappas breached a duty owed to the AmeriFirst Clients and that Godwin Pappas proximately caused the AmeriFirst Clients' damages. *Id.* at *5-6. The court reasoned that Reneker failed to make a plausible showing that the AmeriFirst Clients were unaware of the illegality of their actions or that Godwin Pappas was acting contrary to its clients' instructions. *Id.*

Reneker then filed a second amended complaint. The court held in *Reneker v. Offill*, 2010 WL 1541350 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) ("*Reneker III*"), that Reneker had remedied the deficiencies identified in *Reneker II* by asserting that the AmeriFirst Clients were not aware that their actions were illegal and did not intend to commit fraud or violate securities laws. *Id.* at *4. The court declined Godwin Pappas' request to take judicial notice of various judgments in the SEC Enforcement Action against Bruteyn, Bowden, and the AmeriFirst Clients for the purpose of proving that the AmeriFirst Clients knowingly violated

the securities laws. *Id.* at \*5-6. The court concluded that "[j]udicial notice is reserved for indisputable facts" and that "courts may only properly judicially notice the fact of certain outcomes in related proceeding; . . . [not] accept the individual factual findings of another case as evidence of the truth of the matter." *Id.* at \*6. The court also rejected Godwin Pappas' affirmative defense of *in pari delicto*, concluding that the elements did not appear on the face of Reneker's second amended complaint and that it was necessary to examine evidence to determine whether application of *in pari delicto* would further its policy purpose. *Id.* at \*8.

## C

After Reneker filed his third amended complaint, Godwin Pappas filed the instant motion for summary judgment. It contends that Reneker lacks standing to bring the professional negligence claim; that there are no genuine fact issues as to whether Godwin Pappas breached a duty owed to the AmeriFirst Clients and whether the alleged breach proximately caused AmeriFirst Clients to suffer injury; and that, even if Reneker's claim is not dismissed on the basis of the first two grounds, the claim is precluded based on the affirmative defense of *in pari delicto*. Reneker opposes this motion. Before responding to the motion, Reneker filed his fourth amended complaint,[4] and, with leave of court, filed a supplemental response brief and supplemental evidence appendixes. Godwin Pappas filed a reply brief and, with leave of court, a supplemental reply brief and a supplemental evidence

---

[4]Neither side contends that the filing of the fourth amended complaint requires rebriefing.

- 7 -

appendix.

II

Godwin Pappas' summary judgment burden depends on the particular ground on which it relies. Regarding a claim on which Reneker will bear the burden of proof at trial (e.g., professional negligence), Godwin Pappas can meet its summary judgment obligation by pointing the court to the absence of evidence on any essential element of the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Reneker must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Reneker's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Reneker's failure to produce proof as to any essential element of the claim renders all other facts regarding that claim immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment for Godwin Pappas is mandatory as to the claim in question if Reneker fails to meet this burden. *Little*, 37 F.3d at 1076.

Concerning affirmative defenses and matters as to which it will bear the burden of proof at trial (e.g., *in pari delicto*), Godwin Pappas can obtain summary judgment by "establish[ing] 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This

- 8 -

means that Godwin Pappas must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Godwin Pappas moves for summary judgment on the ground that Reneker lacks standing to sue on behalf of the AmeriFirst Clients.

A

The doctrine of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). At issue here is whether Reneker has constitutional standing. To satisfy the requirements of Article III of the Constitution, Reneker must show, at an "'irreducible constitutional minimum,'" that "he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant[s], and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements."). The injury in fact must be "concrete and . . . actual or imminent, not conjectural or hypothetical," and "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S.

- 9 -

at 560, 561 & n.1 (citations omitted).  It must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id.* at 560 (alterations omitted) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).  And "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon*, 426 U.S. at 38).

A receiver stands in the place of the individuals and entities over whose property he has been appointed receiver.  *See Hymel v. FDIC*, 925 F.2d 881, 883 (5th Cir. 1991).  "It is a well-known legal principle that a receiver can bring only those claims belonging to the entit[ies] it represents and cannot bring claims on behalf of third parties," such as investors.  *See also, e.g., Scholes v. Stone, McGuire & Benjamin*, 821 F. Supp. 533, 535 (N.D. Ill. 1993) (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)); *Scholes v. Schroeder*, 744 F. Supp. 1419, 1422 (N.D. Ill. 1990) ("Fraud on *investors* that damages those *investors* is for those *investors* to pursue—not the receiver.  By contrast, fraud on the *receivership entity* that operates to *its* damage is for the *receiver* to pursue[.]") (emphasis in original).  Because Reneker is the receiver for the AmeriFirst Clients, he is precluded "from bringing causes of action that belong to their investors as such, as contrasted with claims that belong directly to [the AmeriFirst Clients] for whom [Reneker] is the appointed representative."  *Scholes*, 744 F. Supp. at 1421.

Therefore, standing in the shoes of the AmeriFirst Clients, Reneker must allege an "injury in fact" suffered by the AmeriFirst Clients that is "concrete" and "actual or

imminent," that was caused by Godwin Pappas, and that can be redressed by a favorable decision.  *See Lujan*, 504 U.S. at 560-61.

B

After the court in *Reneker I* dismissed Reneker's complaint on the basis that he alleged an injury that was not distinct from the investors' injury, *Reneker I*, 2009 WL 804134, at *6, Reneker filed an amended complaint.  The court held in *Reneker II* that Reneker had satisfied the requirements of standing in the amended complaint because he alleged that Godwin Pappas' negligence caused the AmeriFirst Clients to incur liabilities to third parties, or that such negligence had increased AmeriFirst Clients' liabilities to third parties, both of which were concrete, actual, and distinct injuries from the investors' injuries. *Reneker II*, 2009 WL 3365616, at *3.  *Reneker II* was decided, however, under the Rule 12(b)(6) standard, and the court assumed the truth of the allegations of the amended complaint.  *See id.* at *2-3 (holding that amended complaint alleged actual and concrete injury); *see also, e.g., Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (holding that "'[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to show standing") (quoting *Lujan*, 504 U.S. at 561).  The court must now decide the standing question under the summary judgment standard.  At the summary judgment stage, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also Cadle*, 562 F.3d at 371 ("[B]ut when [standing is] challenged by a motion for summary

- 11 -

judgment, . . . evidence is required, including affidavits and other facts.  If such evidence is presented, whether controverted or not, it is accepted as true and survives summary judgment; if the evidence is controverted, standing must be supported adequately by the evidence adduced at trial.") (quoting *Lujan*, 504 U.S. at 561) (internal quotation marks omitted).  Reneker must present evidence that creates a genuine issue of material fact.  *See Croft v. Governor of Tex.*, 562 F.3d 735, 746 (5th Cir. 2009) ("At this stage of litigation—summary judgment—the plaintiffs' burden on standing is only to raise an issue of material fact.").

## C

Godwin Pappas' motion can be reduced to these three arguments: first, although Reneker alleges that he seeks damages suffered by the AmeriFirst Clients for causing or increasing liabilities to third parties, he actually seeks "nothing more than investor losses," Ds. Br. 15; second, there is no evidence or argument that Godwin Pappas' allegedly negligent legal representation caused the AmeriFirst Clients to incur liabilities or to increase their liabilities; and, third, under the Seventh Circuit's opinion in *Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 234 & n.4 (7th Cir. 2003), AmeriFirst Funding and AmeriFirst Acceptance did not suffer any injury but only benefited by the inflow of investments because the sole purpose of the entities was to facilitate a fraudulent investment scheme and Godwin Pappas' allegedly negligent representation resulted in the receipt of additional investments in furtherance of the scheme.

IV

A

Godwin Pappas contends that although Reneker characterizes the injuries as liabilities incurred to third parties or increased liabilities to third parties, he is actually suing for investor losses.[5]  Reneker responds that the AmeriFirst Clients' injuries are distinct from investor losses.  He bases this argument on the deposition testimony of Brown, the receiver in the SEC Receivership.  Brown identified three "classes of creditors" who received distributions from the SEC Receivership: (1) business creditors (Brown referred to them as

_____

[5]Godwin Pappas also argues that Reneker is effectively seeking investor losses because any recovery from this action will be turned over to the receiver in the SEC Enforcement Action, to be distributed solely to investors because the other creditors have been paid.  The court disagrees.  As the Third Circuit explained in an analogous bankruptcy context:

> The . . . assertion that this action will benefit creditors is not an admission that this action is being brought on their behalf.  In a liquidation case, it is commonplace for a trustee to pursue an action on behalf of the debtor in order to obtain a recovery thereon for the estate. If the trustee is successful in the action, the recovery which he obtains becomes property of the estate and is then distributed pursuant to the scheme established by § 726(a). Simply because the creditors of a[n] estate may be the primary or even the only beneficiaries of such a recovery does not transform the action into a suit by the creditors.

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 349 (3d Cir. 2001) (alteration in original) (quoting *In re Jack Greenberg, Inc.*, 240 B.R. 486, 506 (Bankr. E.D. Pa.1999)); *see also Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir.1995) ("That the return would benefit the limited partners is just to say that anything that helps a corporation helps those who have claims against its assets.").  Merely because assets in the Receivership Estate could go to investors does not mean that Reneker's lawsuit is being brought on behalf of the investors.

"trade creditors"), (2) "professional creditors," and (3) "defrauded investors."  Ds. July 25, 2011 App. 111-12.

Brown described the first class (business creditors) as those whom he considered trade creditors.  These liabilities included the costs of car purchases, insurance, premiums on real estate, utility bills, property taxes, and vendors who repossessed vehicles.[6]  Brown identified the second class (professional creditors) as "the attorneys, [and] the fees to my . . . accounting firm," that "were run through fee applications that the court approved" and totaled "about seven million probably."  *Id.* at 112.  Brown testified that the third class (defrauded investors) was owed $28 million for unpaid investments and $14 or $15 million in unpaid interest.

Brown testified that the AmeriFirst Clients were injured by incurring liabilities to two classes of third parties—business creditors and professional creditors—or by increasing such

---

[6]Brown testified, in pertinent part:

> We probably have paid out [$]5.6 or $5.7 million to what I would consider trade creditors, and that's — without being able to tell you how many, that's — that is the collection staff. Those are individuals that cars were purchased from.  Those would be the . . . insurance, . . . premiums on all the real estate. It would be utility bills.  It would be . . . property taxes.  It would be . . . the repo guys that had to go out and repossess the cars.  So we were — up until probably about six months we were . . . operating . . . a fairly robust business.  So in the course of running those businesses, there were probably about $5.6 million, maybe [$]5.7, that would have gone to what I would consider. . . business creditors.

Ds. July 25, 2011 App . 111.

liabilities. The summary judgment evidence reasonably permits the finding that both categories of liabilities are distinct from investor losses. It permits the finding that business creditor liabilities were incurred in operating the business, and that professional creditor liabilities consist of fees incurred during the SEC Receivership.

Because it appears that Reneker's professional negligence claim is also based on liabilities incurred by the AmeriFirst Clients to the defrauded investors, or the increased liabilities to such investors, the court will examine whether these liabilities are distinct from investor losses. Reneker attempts to distinguish the two by referring to Brown's deposition. Although Brown testified that "the essence of the two [is] . . . completely different," he acknowledged that "investor losses should be equivalent to the dollar of investment liabilities that appear on [AmeriFirst Clients'] books," and that interest would appear both on the AmeriFirst Clients' liability sheet as interest owed and as part of investor losses as interest not recovered. *Id.* at 156. This demonstrates that the AmeriFirst Clients' liability to investors and investor losses are mathematically equivalent.[7] Because Reneker refers only to Brown's testimony, and his testimony would only reasonably permit the finding that the AmeriFirst Clients' investor liability is the same as investor losses, the court holds that these liabilities are not distinct from investor losses. Accordingly, the court dismisses Reneker's professional negligence claim for lack of standing to the extent it is based on liabilities

---

[7]Reneker also refers to other testimony of Brown regarding the AmeriFirst Clients' increased liability to investors for interest on their investments. Brown clarified that, although the AmeriFirst Clients are liable for interest, interest also appears as a loss to investors, further demonstrating that the concepts are not distinct.

- 15 -

incurred to defrauded investors or the increased amount of such liabilities.

## B

This conclusion does not eliminate Reneker's entire claim because there remain the injuries of liabilities incurred to business and professional creditors or the increased amount of such liabilities. Godwin Pappas contends that Reneker has failed to show that Godwin Pappas' allegedly negligent legal representation caused the AmeriFirst Clients to incur liabilities to such creditors or that it increased such liabilities.

## 1

Regarding business creditor liabilities, Reneker refers to Brown's deposition, which offers examples of business creditors to whom liability was owed. But the summary judgment evidence does not permit the reasonable finding that these liabilities were incurred or increased due to Godwin Pappas' alleged negligence rather than in the ordinary course of AmeriFirst Clients' operations, with or without Godwin Pappas' involvement. For example, there is no summary judgment evidence that because of Godwin Pappas' allegedly negligent legal representation, the volume or rate of repossession increased, resulting in greater business creditor liabilities than in the ordinary course of business.

Reneker asserts that the "expert reports and affidavits, as well as factual evidence, prove Defendants' malpractice caused Reneker's damages or at least demonstrate a genuine dispute on causation and damages that only a trier of fact can resolve." P. Br. 23. He refers to the initial expert report of Daniel R. Kirshbaum ("Kirshbaum") and the expert report of Bruce A. Campbell ("Campbell"). Assuming *arguendo* that these expert opinions should not

be stricken on the grounds asserted in Godwin Pappas' motion to strike expert testimony, the provisions that Reneker specifically identifies do not address whether Godwin Pappas' allegedly negligent legal representation caused or increased specifically the business creditor liabilities.  Kirshbaum states, in relevant part:

> 5. The erroneous legal advice and services rendered by Offill and Godwin Pappas caused the AmeriFirst [Clients] to engage in illegal conduct.  The AmeriFirst [Clients] were entitled to and did rely on Offill and Godwin Pappas to their detriment in connection with the illegal conduct.
>
> 6. The conduct of Offill and Godwin Pappas in rendering erroneous legal advice and services was negligent.  As such, this conduct had the effect of creating and perpetrating the illegal offering engaged in by their clients, the AmeriFirst [Clients].

Ds. July 25, 2011 App. 325.  These opinions at most suggest that Godwin Pappas caused the AmeriFirst Clients to engage in illegal conduct, that Godwin Pappas was negligent, and that Godwin Pappas created and perpetuated the illegal offering.  The opinions do not support a reasonable finding that Godwin Pappas caused or increased business creditor liabilities.

Campbell opined, in relevant part:

> The deceptive, misleading, and evasive responses to the TSSB enabled AmeriFirst to continue to sell [C]SDOs to Floridians, and others inconsistent with the securities laws.  Had the false and misleading statements not been made, it is likely the TSSB or others would have moved more quickly to shut down the sales of [C]SDOs.  The effect of the lawyers' conduct was that it allowed AmeriFirst to receive illegally-obtained investments, subjected AmeriFirst to being enjoined, and harmed the AmeriFirst businesses. The conduct of the lawyers was inconsistent with the expressed desires of Bowden who had operated many of the AmeriFirst clients for years. The lawyers' conduct was also adverse to the interests of the AmeriFirst

- 17 -

clients in conducting their business in a legal and ethical way.

P. Sept. 21, 2011 App. 330.  Campbell's opinions would most support a reasonable finding that Godwin Pappas' conduct enabled the AmeriFirst Clients to continue selling the CSDOs, which harmed *the AmeriFirst Clients*.

Reneker also cites the entire expert report and affidavit of Campbell, which totals over 30 pages.  *See* P. Br. 24 & n.41.  The court has specifically rejected attempts to cite large blocks of summary judgment evidence.  *See, e.g., Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *3 n.4 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.).  It is well settled that the court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment.  *See, e.g., Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006).  "Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citing *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)).  "Rule 56, therefore, saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones*, 82 F.3d at 1338 (citing cases). Moreover, under N.D. Tex. Civ. R. 56.5(c), "[w]hen citing materials in the record, as required by Fed. R. Civ. P. 56(c)(1)(A) or (B), a party must support each assertion by citing each relevant page of its own or the opposing party's appendix." *Id.*

> A district court's decision on summary judgment is largely
> controlled by what the parties presented. If somewhere in a
> record there is evidence that might show a dispute of material
> fact, the district court needs to be pointed to that evidence as
> opposed to having to engage in an extensive search.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (on rehearing) (citing

Rule 56(c); *Jones*, 82 F.3d at 1338).

Reneker repeatedly asserts that because of Godwin Pappas' negligence, the

"AmeriFirst Clients took on more creditors than their assets could cover and became liable

to third parties when they otherwise would not have been." P. Br. 25, *see also id.* at 22

("[T]he negligence of Defendants caused AmeriFirst Clients to assume liabilities they

otherwise would not have."); 24 ("Reneker's alleged damages are liabilities to third parties,

including AmeriFirst Clients' indebtedness, created or increased by Defendants' negligence

when they otherwise would not have been."). But these assertions are conclusory and are not

supported by citations to the record.

Because Reneker has failed to meet his burden of adducing evidence that would

permit the reasonable finding that the increase in liabilities to business creditors (trade

creditors) is fairly traceable to Godwin Pappas' allegedly negligent legal representation,

Reneker lacks standing to sue for increased business creditor liabilities.[8]

---

[8]In Godwin Pappas' criticism of the alleged business creditor liabilities, it asserts that
these liabilities appears to have been incurred exclusively by American Eagle. The court
need not address this argument because the court holds that Reneker lacks standing to
recover for such injuries.

2

Regarding professional creditor liabilities, Reneker also relies on Brown's deposition, which describes this liability as including attorney and accounting fees incurred by the SEC Receivership. *See* Ds. July 25, 2011 App. 112 (in listing creditors paid by SEC Receivership, noting "professional fees," which is defined as attorney and accounting fees that "were run through fee applications that the court approved").

The court holds that the summary judgment evidence permits the reasonable finding that the professional creditor liabilities are fairly traceable to Godwin Pappas' allegedly negligent representation of the AmeriFirst Clients. The evidence would enable a reasonable finding that Godwin Pappas negligently failed to properly advise and assist the AmeriFirst Clients in offering the CSDOs for public sale. For example, Tamera Burleson ("Burleson") averred that she was "present at a meeting" where "Mr. Offill [told] Mr. Bruteyn that the documents 'passed muster.'" P. Sept. 21, 2011 App. 486.[9] The public sale of CSDOs violated registration and antifraud provisions of various state and federal laws. In the SEC Enforcement Action, the SEC obtained judgment against several defendants and relief defendants, and Brown was appointed as receiver to, *inter alia*, take "control, possession, and custody of all Receivership Assets and Receivership Records." Am. Receivership Order ¶

---

[9]Godwin Pappas objects to certain portions of Burleson's affidavit, contending that some portions are speculative and self-serving and others are not based on personal knowledge because Burleson was not with Bowden at all times. *See* Ds. Mot. Strike Br. 2. The part on which the court relies is based on Burleson's personal knowledge and is not speculative.

2. The professional fees were incurred by the receivership.

Accordingly, the summary judgment evidence supports a reasonable finding that the professional fees incurred by the SEC Receivership are fairly traceable to Godwin Pappas' allegedly negligent conduct.

C

Godwin Pappas also maintains that Reneker lacks standing because the sole purpose of AmeriFirst Funding and AmeriFirst Acceptance was to facilitate a fraudulent investment scheme, and Godwin Pappas' allegedly negligent legal representation did not harm these entities by attracting additional investments. Godwin Pappas places great emphasis on the Seventh Circuit's opinion in *Knauer*.

*Knauer* is not binding on this court, Godwin Pappas does not point to a binding decision that adopts this approach in determining whether a plaintiff has suffered an injury sufficient for constitutional standing, and the court has not located such a case. The court declines to conclude based on *Knauer* that Reneker lacks constitutional standing.

D

In summary, the court grants summary judgment in part and dismisses Reneker's professional negligence claim for lack of standing to the extent it is based on liabilities incurred, or increased liabilities incurred, by the AmeriFirst Clients to business creditors and investors.

The court denies Godwin Pappas' motion as to liabilities, or increased liabilities, to professional creditors. The summary judgment record supports the reasonable finding that

Godwin Pappas' allegedly negligent legal representation caused the AmeriFirst Clients to incur such liabilities or increased liabilities. Although Godwin Pappas only disputes one element of standing (whether the injuries are fairly traceable to Godwin Pappas' actions), the court must assess independently whether it has constitutional standing. *See, e.g., Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 & n.1 (5th Cir. 2002) (noting that constitutional standing issues must be considered at the outset, even if the court must raise them *sua sponte*, "because it determines the court's fundamental power even to hear the suit") (quoting *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002)). The court holds that the injury of incurred or increased professional fees is actual and concrete, and redressable by a favorable decision.

V

Godwin Pappas also moves for summary judgment on the ground that the evidence does not support a finding that it breached a duty owed to the AmeriFirst Clients or that the alleged breach proximately caused the AmeriFirst Clients to suffer injury.

A

"Attorneys owe their clients the duty to act with ordinary care—i.e., in a manner consistent with the standard of care that would be expected to be exercised by a reasonably prudent attorney." *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426 (Tex. App. 2009, no pet.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)). Complaints that an attorney failed to meet this duty of ordinary care sound in negligence. *See, e.g., Cosgrove*, 774 S.W.2d at 664 ("An attorney malpractice action in

Texas is based on negligence."). A plaintiff asserting a claim for professional negligence[10] must prove "that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *E.g., Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995). "The standard is an objective exercise of professional judgment, not the subjective belief that his acts are in good faith." *Cosgrove*, 774 S.W.2d at 665. "If an attorney makes a decision which a reasonably prudent attorney could make in the same or similar circumstance, it is not an act of negligence even if the result is undesirable." *Id.*

To establish proximate cause, a plaintiff must prove both cause in fact and foreseeability. *Hall v. Stephenson*, 919 S.W.2d 454, 466 (Tex. App. 1996, pet. denied) (citing *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995)). "Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury that would not otherwise have occurred." *Id.* (citing *Prudential Ins. Co. v. Jefferson Assocs. Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)). "Foreseeability means that the actor should have anticipated the dangers that his negligent act created for others. [It] does not require that the actor anticipate the precise consequences of his actions." *Id.* (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)). "These elements cannot be satisfied by mere conjecture, guess, or speculation." *Bd. of Trustees of Fire & Police Retiree Health Fund v.*

---

[10]Courts have "use[d] 'legal malpractice' and 'professional negligence' interchangeably to refer to claims arising from an attorney's allegedly inadequate legal representation, although 'professional negligence' might be a more precise term." *Beck*, 284 S.W.3d at 427 n.10.

*Towers, Perrin, Forster & Crosby, Inc.*, 191 S.W.3d 185, 190 (Tex. App. 2005, no pet.) (quoting *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2004)).

Godwin Pappas maintains that the knowledge and conduct of Bruteyn and Bowden should be imputed to the AmeriFirst Clients.  Under Texas law,[11] "[a] corporation can act and acquire knowledge only through its agents.  Knowledge held by corporate officers or directors may be imputed to the corporation itself." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. 2008, pet. denied) (quoting *Poth v. Small, Craig & Werkenthin, L.L.P.*, 967 S.W.2d 511, 515 (Tex. App. 1998, pet. denied)) (internal quotation marks omitted). "Generally, 'when actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself,' and 'status as a vice-principal of the corporation is sufficient to impute liability to the corporation with regard to his actions taken in the workplace.'" *Bennett v. Reynolds*, 315 S.W.3d 867, 884 (Tex. 2010) (alterations omitted) (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999)).  The term "vice-principal" includes four classes of agents:

---

[11]Imputation is governed by state law. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83 (1994) (holding that "[t]here is no federal general common law," and that "the remote possibility that corporations may go into federal receivership is no conceivable basis for adopting a special federal common-law rule divesting States of authority over the entire law of imputation") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Although the parties do not specify whether the AmeriFirst Clients are Texas corporations, they rely on Texas law, and the court will do so as well.

> (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business.

*Id.* (quoting *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 250 n.1 (Tex. 2009)).

This does not mean, however, that "an employee's fraud is *always* attributable to the corporation." *Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 190 (Tex. App. 1987, writ denied) (emphasis added) (citing *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir.1982)). "Instead, imputation turns on whether the agent was acting for or against the principal's interests; knowledge acquired by an agent acting adversely to his principal is not attributable to the principal." *Askanase v. Fatjo*, 828 F. Supp. 465, 470 (S.D. Tex. 1993) (collecting cases).

> [W]hether an employee's fraud is attributable to a corporation depends on whether the fraud was on behalf of the corporation or against it: Fraud on behalf of a corporation is not the same thing as fraud against it. Fraud against the corporation usually hurts just the corporation; the stockholders are the principal if not only victims; their equities vis-a-vis a careless or reckless auditor are therefore strong. But the stockholders of a corporation whose officers commit fraud for the benefit of the corporation are beneficiaries of the fraud . . . . But the primary costs of a fraud on the corporation's behalf are borne not by the stockholders but by outsiders to the corporation, and the stockholders should not be allowed to escape all responsibility for such a fraud, as they are trying to do in this case.

*FDIC v. Ernst & Young*, 967 F.2d 166, 170-71 (5th Cir. 1992) (quoting *Greenstein*, 744

S.W.2d at 190-91).

## B

Godwin Pappas contends that the evidence does not support a finding that it breached a duty owed to the AmeriFirst Clients or that the alleged breach proximately caused the AmeriFirst Clients to suffer injury.[12]  It refers to *Reneker II*, in which the court held that Reneker failed in his amended complaint to allege a "breach of the duties owed to the AmeriFirst Clients to make the[ir] negligence claim plausible" because "[i]f the AmeriFirst Clients knew they were committing—indeed, fully intended to commit—fraud, it is not apparent how Godwin Pappas' failure to tell them what they already knew could be a negligent breach of a lawyer's duty to the client." *Reneker II*, 2009 WL 3365616, *5.  The court also concluded that because Reneker failed to "allege that the AmeriFirst Clients were unaware of the illegality of their actions or that their illegal actions were unintentionally so—the result of negligent advice from their attorneys," it is unclear whether "Godwin Pappas' actions were a 'substantial factor' in the AmeriFirst Clients' damages," since "[i]t is speculative to assume that any change in Godwin Pappas' actions would have altered the actions of the AmeriFirst Clients themselves." *Id.* at *6.  In other words, the court reasoned

---

[12]Godwin Pappas also maintains that there are no genuine issues of material fact concerning whether the breach caused the AmeriFirst Clients to commit illegal conduct. This is a component of proximate cause; it asks whether Godwin Pappas caused the AmeriFirst Clients to suffer injury or whether the AmeriFirst Clients fully intended to commit fraud, so that their actions could not have been altered by Godwin Pappas.  Because Godwin Pappas raises this argument when discussing issue preclusion and Bowden's alleged admissions, *see* Ds. Br. 18, 24, the court will consider the argument in that context.

that if the AmeriFirst Clients knew of the illegal actions, Godwin Pappas could not have breached a duty to warn the AmeriFirst Clients of what they already knew, and this alleged failure could not have been a proximate cause of the damages if the AmeriFirst Clients would not have changed their actions.  Reneker cured these pleading defects in his second amended complaint.  *See Reneker III*, 2010 WL 1541350, at *4.

Godwin Pappas maintains that Reneker cannot prove breach of any duty or proximate cause because the AmeriFirst Clients knew of the securities fraud.  Godwin Pappas requests that the court take judicial notice of findings in an opinion of the court in the SEC Enforcement Action, *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 1959843 (N.D. Tex. May 5, 2008) (Fitzwater, C.J.) ("Disgorgement and Penalties Opinion"), and Bruteyn's criminal conviction, *United States v. Bruteyn*, No. 3:09-CR-0136-M, at 1 (N.D. Tex. filed May 19, 2009) ("Bruteyn Criminal Case").  It also requests that the court take judicial notice of occurrences and positions taken in the SEC Enforcement Action.

Godwin Pappas also argues that Reneker is barred by the doctrine of issue preclusion from asserting that the AmeriFirst Clients lacked knowledge of their illegal actions because Bruteyn's criminal conviction and the court's Disgorgement and Penalties Opinion establish that Bruteyn knew that the actions were illegal and that Bruteyn's knowledge should be imputed to the AmeriFirst Clients.

Godwin Pappas maintains that the evidence establishes that Bowden "knew they were misappropriating investor funds, defrauding investors, and otherwise violating securities laws during the time Defendants[] represented them," and his knowledge should be imputed to the

AmeriFirst Clients.  Ds. Br. 24.

Godwin Pappas also posits that Reneker is barred by judicial estoppel from contending that the AmeriFirst Clients did not intentionally mislead or victimize investors because of statements made by Brown, the receiver in the SEC Enforcement Action.

## VI

The court considers first the extent to which it can take judicial notice of the Disgorgement and Penalties Opinion and the Bruteyn Criminal Case, and occurrences and positions taken in the SEC Enforcement Action.

## A

"A fact that has been judicially noticed is not subject to dispute by the opposing party." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) ("Since the effect of taking judicial notice under [Fed. R. Evid.] 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing.") (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).  Rule 201 provides that a court can take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*  In other words, judicial notice extends only to indisputable adjudicative facts. *See Taylor*, 162 F.3d at 830 (holding that determination in prior court proceeding was, first, not indisputable, because it was open to dispute, disputed by the parties, and "not the

type of self-evident truth that no reasonable person could question, a truism that approaches platitude or banality," and, second, not an adjudicative *fact* because it was a legal determination of a mixed question of fact and law) (alterations omitted) (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 347-48 (5th Cir. 1982)) (internal quotation marks omitted).

Courts can take judicial notice, for example, of the existence of a prior judgment for the limited purpose of proving that a judgment was entered, *see id.* at 831, or of "a document filed in another court . . . to establish the fact of such litigation and related filings," *see Ferguson v. Extraco Mortg. Co.*, 264 Fed. Appx. 351, 352 (5th Cir. 2007) (per curiam) (citing *Taylor*, 162 F.3d at 830). But a court generally cannot take judicial notice of the findings of fact from other proceedings for the truth of the matter asserted because those facts are usually disputed and almost always are disputable. *See Taylor*, 162 F.3d at 830 (quoting with approval *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997)); *see also Ferguson*, 264 Fed. Appx. at 352.

B

In *Reneker III* the court considered the issue of judicial notice. Based on judgments against Bruteyn, Bowden, and the AmeriFirst Clients in the SEC Enforcement Action, Godwin Pappas asked the court to judicially notice the specific fact that the AmeriFirst Clients knowingly violated the securities laws. *See Reneker III*, 2010 WL 1541350, at *5-6. The court declined to take judicial notice, reasoning as follows:

> Judicial notice is reserved for indisputable facts. The complexity of the SEC Enforcement Action and of the various judgments entered separately against the individual parties makes taking judicial notice of any element of any securities violation unfair to the parties. The SEC Enforcement Action, while related to this case, does not involve precisely the same parties and issues, and the court therefore concludes that it cannot apply any particular factual finding from that case to this motion to dismiss. Further, courts may only properly judicially notice the fact of certain outcomes in related proceedings; the court cannot accept the individual factual findings of another case as evidence of the truth of the matter.

*Id.* at *6 (footnote omitted). The court also stated that "[a]ny evidence that Godwin Pappas intends to present to impeach Reneker's factual allegations may be introduced at a later point, in particular, in a motion for summary judgment or at trial." *Id.*

Godwin Pappas now requests that the court take judicial notice of the following: (1) the findings in the Disgorgement and Penalties Opinion that "AmeriFirst Acceptance and AmeriFirst Funding had committed securities fraud," Ds. Reply 2; (2) a jury finding in the Bruteyn Criminal Case that "Bruteyn [had] fraudulently sold the [CSDOs] at issue in this case," *id.*; and (3) the "occurrences and positions taken in the SEC [Enforcement] Action" in order to "demonstrate positions taken in that action for judicial estoppel purposes or simply to recollect what transpired in the SEC [Enforcement] Action," but "not for the truth of the matters asserted," *id.* at 2-3.

C

Godwin Pappas requests that the court take judicial notice of a finding in the Disgorgement and Penalties Opinion that "AmeriFirst Acceptance and AmeriFirst Funding had committed securities fraud." *Id.* at 2.[13]  It is unclear where Godwin Pappas derives this "finding" from, because it only cites the first page of the Disgorgement and Penalties Opinion, *see id.* at 2 n.2, which states, in relevant part, that the SEC sued Bruteyn, Bowden, AmeriFirst Funding, and AmeriFirst Acceptance for allegedly operating an investment fraud, *see* Disgorgement and Penalties Opinion, 2008 WL 1959843, at *1.  And even if the court could take judicial notice, this does not support Godwin Pappas' assertion that the court found that AmeriFirst Acceptance and AmeriFirst Funding had committed securities fraud; it only supports the conclusion that the SEC had sued them for operating an investment fraud. It is possible that Godwin Pappas intends to refer another part of the opinion that relates to Bruteyn and Bowden's actions and involvement in the AmeriFirst Clients' sale of CSDOs.[14]

---

[13]It is irrelevant that the SEC Enforcement Action was also before the undersigned judge.  This "does not alter the nature of those facts nor impose a higher duty of notice" on the court.  *See Ferguson*, 264 Fed. Appx. at 352.

[14]The court recounted the following:

> Since at least January 2006, Bruteyn, together with Bowden, sold secured debt obligations ("SDOs") through the AmeriFirst entities (i.e., AmeriFirst Funding and AmeriFirst Acceptance, collectively) to hundreds of investors, many of whom were senior citizens.  Bruteyn and Bowden controlled all aspects of the AmeriFirst entities' operations. Bruteyn was the managing director of both AmeriFirst entities. Defendants' sale of these SDOs violated the securities laws in two fundamental ways.

But the court stated that, "[w]hen recounting the[se] facts, the court relies on the well-pleaded facts alleged in the SEC's first amended complaint." *See id.* at *2 n.2. The court therefore did not find that "AmeriFirst Acceptance and AmeriFirst Funding had committed securities fraud." *See* Ds. Reply. Moreover, even if the court were to assume that these were "findings," they were disputed in the SEC Enforcement Action. And Bruteyn's actions, and the extent to which they bear on the AmeriFirst Clients' alleged commission of securities fraud, are disputed now. *See Ferguson*, 264 Fed. Appx. at 352 (holding that district court did not err in declining to take judicial notice because "[t]he facts relevant to whether a prima facie case was established in the other two cases were subject to reasonable dispute, and were indeed disputed"); *cf. Taylor*, 162 F.3d at 830 (noting that determination was disputable because it was "not the type of self-evident truth that no reasonable person could question, a truism that approaches platitude or banality," which is required for judicial notice) (alterations and internal quotation marks omitted).

The court therefore declines to take judicial notice on the first requested basis.

———————————

> First, defendants never filed a registration statement for the SDOs under § 5 of the Securities Act. Thus the sale of each security contravened §§ 5(a) and 5(c) of the Securities Act, because defendants sold these SDOs to the public through a general solicitation. Second, defendants knowingly, or with severe recklessness regarding the truth, made misrepresentations and omitted material facts in connection with the offer or sale of the SDOs, in violation of § 17(a) of the Securities Act and § 10(b) of the [Securities and Exchange Act of 1934].

Disgorgement and Penalties Opinion, 2008 WL 1959843, at *2 (footnote omitted).

D

Godwin Pappas requests that the court take judicial notice of the jury's findings in the Bruteyn Criminal Case that "Bruteyn [had] fraudulently sold the [CSDOs] at issue in this case." Ds. Reply 2.

In 2010 a jury convicted Bruteyn of nine counts of securities fraud, in violation of § 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"). *See United States v. Bruteyn*, No. 3:09-CR-136-M (N.D. Tex. Apr. 14, 2010) (verdict), *appeal docketed*, No. 10-10416 (5th Cir. Mar. 24, 2011). The jury found beyond a reasonable doubt that Bruteyn "willfully, knowingly, and with intent to defraud," by use of "the mails or a means or instrumentality of interstate commerce," "employed a device, scheme, or artifice to defraud" or "made an untrue statement of material fact or omitted to state a material fact that was necessary in order to make the statements that were made, in light of the circumstances under which they were made, not misleading" or "engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon any person." *United States v. Bruteyn*, No. 3:09-CR-136-M, at 8 (N.D. Tex. Apr. 14, 2010) (court's charge). If Godwin Pappas were requesting, for example, that the court take judicial notice of Bruteyn's conviction for the limited purpose of proving the conviction itself, the court could do so. *See Taylor*, 162 F.3d at 831. But Godwin Pappas is asking the court to take judicial notice of a fact found by the jury—that Bruteyn fraudulently sold CSDOs—so that it can be relied on for the truth of the matter asserted. And this fact was disputed in the criminal trial and is disputed now to the extent it bears on the AmeriFirst Clients' knowledge. This the court

- 33 -

cannot do. *See Ferguson*, 264 Fed. Appx. at 352; *cf. Taylor*, 162 F.3d at 830. "[W]ere [it] permissible for a court to take judicial notice of a fact merely because it had been found to be true in some other action, the doctrine of [issue preclusion] would be superfluous." *Taylor*, 162 F.3d at 830 (alteration in original) (quoting with approval *Jones*, 29 F.3d at 1553-54).

E

Godwin Pappas also requests that the court take judicial notice of the "occurrences and positions taken in the SEC [Enforcement] Action" in order to "demonstrate positions taken in that action for judicial estoppel purposes or simply to recollect what transpired in the SEC [Enforcement] Action" and "not for the truth of the matters asserted." *See* Ds. Reply 2-3. The request, as Godwin Pappas has limited it, is proper. The court therefore judicially notices the *existence*, but not the *truth*, of the occurrences and positions taken in the SEC Enforcement Action. *See Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) ("[W]hen a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999)); *United States v. Am. Tel. & Tel. Co.*, 83 F.R.D. 323, 334 n.25 (D.D.C. 1979) ("Notice of these records is likely to be limited to the fact of their existence rather than the truth of the matters contained therein.").

VII

Godwin Pappas moves for summary judgment on the ground that the doctrine of issue preclusion bars Reneker from asserting that the AmeriFirst Clients lacked knowledge of their unlawful activity.

A

Godwin Pappas maintains that the Bruteyn Criminal Case and the Disgorgement and Penalties Opinion have already determined the extent of Bruteyn's knowledge and involvement, and that these findings should be imputed to the AmeriFirst Clients because Bruteyn was the Managing Director of both AmeriFirst Funding and AmeriFirst Acceptance and he also served as the Vice President of AmeriFirst Acceptance.[15]  Godwin Pappas also posits that if the AmeriFirst Clients knew of the unlawful activity, such knowledge negates the elements of breach and causation.

B

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  Issue preclusion is an affirmative defense, and the party asserting it—here, Godwin Pappas—bears the burden of proof. *See, e.g., In re Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir. 1986) ("The party seeking to

---

[15]As the special receiver for the AmeriFirst Clients, Reneker stands in the shoes of the AmeriFirst Clients and has no higher rights than the corporations. *See, e.g., White v. Ewing*, 159 U.S. 36, 39 (1895); *see also, e.g., Hymel*, 925 F.2d at 883.  Thus if the AmeriFirst Clients are unable to establish a professional negligence claim against Godwin Pappas, Reneker is similarly unable to do so.

assert that an issue was already adjudicated upon bears the burden of proving that contention[.]"); *Fabela v. City of Farmers Branch, Tex.*, 2010 WL 4610143, at *1-2 (N.D. Tex. Nov. 15, 2010) (Fitzwater, C.J.) (noting that issue preclusion is an affirmative defense and holding that parties asserting had failed to meet burden). Accordingly, Godwin Pappas must show the following:

> (1) that the issue at stake [is] identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009) (quoting *Wehling v. CBS*, 721 F.2d 506, 508 (5th Cir. 1983)).

The principal dispute is whether findings against Bruteyn are binding on the AmeriFirst Clients, which in turn binds Reneker in pursuing the professional negligence claim. Although the parties need not be completely identical, issue preclusion can only be applied against a party to the prior suit and generally cannot be invoked against a nonparty because "a non-party has had no day in court." *E.g., Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989); *see also Taylor*, 553 U.S. at 892-93 ("The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'") (quoting *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996)).[16] There are certain circumstances, however, where issue preclusion

---

[16]Some courts have used the term "privity" to describe when issue preclusion can be invoked against a nonparty. Both sides in this case also use the term "privity." *Taylor*

can extend to nonparties.  The Supreme Court in *Taylor* listed six "recognized exceptions" to the general rule against nonparty preclusion:

> 1. when a nonparty "agrees to be bound by the determination of issues in an action between others";
> 2. "a variety of pre-existing 'substantive legal relationships' between the person to be bound and a party to the judgment";
> 3. when, "in certain limited circumstances," a nonparty was "adequately represented by someone with the same interests who [wa]s a party";
> 4. when a nonparty "assume[d] control" over the prior litigation;
> 5. "when a person who did not participate in a litigation later brings suit as the designated representative of a person who was a party to the prior adjudication"; and
> 6. when a statutory scheme "expressly foreclose[s] successive litigation by nonlitigants."

*Limon v. Berryco Barge Lines, L.L.C.*, 779 F.Supp.2d 577, 583-84 (S.D. Tex. 2011) (quoting

*Taylor*, 553 U.S. at 893-95).[17]

---

avoided using "privity," however, to "ward off confusion," because "privity" "has . . . come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground."  *Taylor*, 553 U.S. at 894 n.8; *see also Montana v. United States*, 440 U.S. 147, 154 n.5 (1979) ("Although the term 'privies' has been used on occasion to denominate nonparties who control litigation, this usage has been criticized as conclusory and analytically unsound.  The nomenclature has been abandoned in the applicable section of the Second Edition of the Restatement.") (citations omitted).  Like *Taylor*, the court will use the term "nonparty" instead of "privity."

[17]In the Fifth Circuit, issue preclusion can be invoked against a nonparty in the following circumstances:

> First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party . . . .  Second, a nonparty who controlled the original suit will be bound by the resulting judgment . . . .  Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit.

C

The court considers first whether Reneker is bound by the doctrine of issue preclusion to the jury's findings in the Bruteyn Criminal Case that he willfully and knowingly committed securities fraud.[18]

_____

*Terrell*, 877 F.2d at 1270 (alteration in original) (quoting *Freeman v. Lester Coggins Trucking Co.*, 771 F.2d 860, 864 (5th Cir. 1985)).   The last category (adequate representation) "refers to the concept of virtual representation, by which a nonparty may be bound because the party to the first suit 'is so closely aligned with [the nonparty's] interests as to be his virtual representative.'" *Freeman*, 771 F.2d at 864 (alteration in original) (quoting *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)).   "[V]irtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues." *Id.* (quoting *Hardy*, 681 F.2d at 340).

    *Taylor* approves of "the three categories . . . used by the Fifth Circuit." *Limon*, 779 F.Supp.2d at 584.   Although *Taylor* disapproved "virtual representation," as defined by the D.C. Circuit, *see Taylor*, 553 U.S. at 904, the Fifth Circuit's definition of "virtual representation" falls within the adequate representation exception approved by *Taylor*, *cf. Limon*, 779 F.Supp.2d at 584-85.   The Supreme Court held that adequate representation requires, "at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 584 (quoting *Taylor*, 553 U.S. at 900) (internal citations omitted).   "Similarly, the Fifth Circuit's virtual representation test requires the 'existence of an express or implied legal relationship in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues[.]'" *Id.* at 585 (quoting *In re Hinsley*, 149 F.3d 1179, 1998 WL 414302, at *9 (5th Cir. July 15, 1998)).

    [18]Issue preclusion can be applied to a prior criminal conviction. *Wolfson v. Baker*, 623 F.2d 1074, 1077 (5th Cir. 1980) ("[T]he general doctrine of [issue preclusion], which bars relitigation of an issue actually and necessarily decided in a prior action is as applicable to the decisions of criminal courts as to those of civil jurisdiction.") (citations and internal quotation marks omitted).   "When the criminal conviction was based on a jury verdict of guilty, 'issues which were essential to the verdict must be regarded as having been determined by the judgment.'" *Id.* at 1078 (quoting *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 (1951)).   "Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to

- 38 -

1

A jury found Bruteyn guilty of nine counts of securities fraud, in violation of §10(b) of the Exchange Act.  In doing so, the jury found beyond a reasonable doubt that Bruteyn acted "willfully, knowingly, and with intent to defraud."  Verdict at 1; Court's Charge at 8. The indictment charged that Bruteyn's criminal conduct involved the securities at issue in this lawsuit: CSDOs "issued by business entities such as AmeriFirst Funding . . . and AmeriFirst Acceptance" between "December 2005 and continuing until in or about July 2007."  Indictment at ¶¶ 1-2 and 5.

Because Reneker and the AmeriFirst Clients were not parties to the Bruteyn Criminal Case, they can only be precluded from litigating a fact decided there if they fall within a nonparty exception.  To obtain summary judgment on this affirmative defense, Godwin Pappas must establish beyond peradventure all the elements of issue preclusion, including that a nonparty exception applies.  Godwin Pappas first attempts to satisfy this heavy burden by defining "privity" as "represent[ing] a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion."  Ds. Br. 21 (quoting *Sw. Airlines Co. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977)).  It then contends, without identifying which nonparty exception the assertion supports, that "[i]n defending the securities fraud charges against him

---

an issue arising against the criminal defendant in a subsequent civil action."  *United States v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983) (citing *In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983)).

in the criminal case, . . . [Bruteyn] also represented and was defending the interests of AmeriFirst Acceptance and AmeriFirst Funding" because (1) "he controlled these entities;" (2) if those entities were prosecuted for securities fraud, "their liability or guilt would clearly turn on Bruteyn's (or Bowden's) liability or guilt," and (3) Reneker testified in his deposition that he accepts the Bruteyn conviction.  Ds. Br. 21-22; Ds. Reply 2.

Reneker responds that the AmeriFirst Clients did not succeed to the interests of Bruteyn, the AmeriFirst Clients did not control Bruteyn's trial, and Bruteyn did not adequately represent the AmeriFirst Clients' interests.  Reneker also contends that, even if Bruteyn and Bowden were aware of the violations, their knowledge should not be imputed to the AmeriFirst Clients because their actions were adverse to the AmeriFirst Clients' legitimate purpose.  He posits that there were "Other Principals" who "wanted to abide by the law."  P. Br. 40.[19]

Because Godwin Pappas does not appear to argue or point to evidence in support of the fifth or sixth nonparty exception, the court will consider its arguments and the evidence to the extent it supports the first, second, third, and fourth exceptions.

_____

[19]Reneker also asserts that "whether [issue preclusion] precludes [his] claims depends on the resolution of disputed facts and, therefore, creates a mixed question of law and fact that precludes summary judgment."  P. Br. 26.  Because the court is ruling in Reneker's favor on Godwin Pappas' affirmative defense of issue preclusion based on the Bruteyn Criminal Case, it need not address this argument.

2

Under the first exception, a nonparty "who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." *Taylor*, 553 U.S. at 893 (quoting 1 Restatement (Second) of Judgments § 40 (1980)); *see also Dugan v. Cavenham Forest Indus., Inc.*, 32 F.3d 565, 1994 WL 442379, at *3 (5th Cir. July 27, 1994) (per curiam) ("If a nonparty plaintiff consents to be bound by the judgment of another trial, the nonparty plaintiff has developed a sufficient legal relationship with the party plaintiff to be virtually represented."); 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4453, at 420 (2002) (stating that reliance on "actual consent to be bound, may fairly be treated as an aspect of preclusion by judgment). Godwin Pappas refers to the deposition testimony of Reneker, who, in response to the question "did Jeffrey Bruteyn defraud investors in connection with his sale of [CSDOs]," answered, "[b]ased on his criminal conviction, yes." Ds. July 25, 2011 App. 38. But Reneker also testified that, "despite the jury's conviction of Mr. Bruteyn for making false representations to investors in connection with the sale of [CSDOs]," the conviction "doesn't bind [Reneker]." *Id.* at 43; *see also id.* at 40 ("[T]hose jury findings are not binding on anybody except Mr. Bruteyn."). Because Godwin Pappas relies solely on Reneker's deposition testimony, and Reneker did not agree to be bound by the Bruteyn Criminal Case in a manner that satisfies the beyond peradventure standard, the court concludes that Godwin Pappas has not established the first nonparty exception.

3

The second nonparty exception provides that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment." *Taylor*, 553 U.S. at 894 (quoting D. Shapiro, *Civil Procedure: Preclusion in Civil Actions* 78 (2001)). The Supreme Court in *Taylor* cited examples of qualifying relationships—"preceding and succeeding owners of property, bailee and bailor, and assignee and assignor"—and explained that "[t]hese exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'" *Id.* (quoting 18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4448, at 329 (2002)); *see also, e.g., Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir. 1985) ("[A] nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party[.]") (quoting *Sw. Airlines*, 546 F.2d at 95). The relationship between the AmeriFirst Clients and Bruteyn, however, is not derived from property law and bears little, if any, similarity to the examples cited. Godwin Pappas has failed to demonstrate beyond peradventure that this nonparty exception applies.

4

Under the third nonparty exception, a nonparty, "in certain limited circumstances," "may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit." *Taylor*, 553 U.S. at 894 (alteration in original) (quoting *Richards*, 517 U.S. at 798). *Taylor* explains the minimum requirements for the adequate representation exception:

> A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented[.]

*Id.* at 900 (internal citations omitted). Examples of "[r]epresentative suits with preclusive effect on non-parties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries." *Id.* at 894-95 (citations omitted).

Godwin Pappas has not established beyond peradventure that Bruteyn was an adequate representative of the AmeriFirst Clients. Godwin Pappas has failed to demonstrate that Bruteyn "understood [him]self to be acting in a representative capacity" or that "the original court took care to protect the interests of the nonparty"—here, the AmeriFirst Clients. *See id.* at 900. An expansive interpretation of the adequate representative exception "would 'recognize, in effect, a common-law kind of class action,'" which would circumvent the procedural protections of Rule 23, and the court declines to broaden this exception in this manner. *See Taylor*, 553 U.S. at 901 (brackets omitted) (quoting *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 972 (7th Cir. 1998)).

5

The fourth nonparty exception applies to a nonparty who "assumed control" over the prior litigation. *See id.* at 895 (internal quotation marks and brackets omitted) (citing cases). To fall within this exception, the nonparty must have "had the opportunity to present proofs

and arguments" and "control over the opportunity to obtain review." *See id.* (quoting Restatement (Second) of Judgments § 39 (1982)) (internal quotation marks omitted); *Freeman*, 771 F.2d at 864 n.3 (quoting *Hardy*, 681 F.2d at 339); *see also Montana v. United States*, 440 U.S. 147, 155 (1979) (holding that party was precluded from contesting issue because it exercised control over prior action, since undisputed evidence showed that it "required the [prior] lawsuit to be filed," "reviewed and approved the complaint," "paid the attorneys' fees and costs," "directed the appeal from State District Court to the Montana Supreme Court," "directed the filing of a notice of appeal to this Court," and "effectuated [prior party's] abandonment of that appeal"). "Typical examples of control that result in collateral estoppel can be found in *Dudley v. Smith*, 504 F.2d 979 (5th Cir. 1974) (president and sole shareholder controls his corporation) and *Astron Industrial Associates, Inc. v. Chrysler Motors Corporation*, 405 F.2d 958 (5th Cir.1968) (parent corporation controls subsidiary)." *Freeman*, 771 F.2d 864 n.3. According to *Dudley*, "[s]tockholders and officers are not in privity to and are not personally bound by judgments against their corporations" unless "the two are found to be alter egos." *See Dudley*, 504 F.2d at 982 (quoting *Am. Range Lines, Inc. v. Comm'r*, 200 F.2d 844 (2d Cir. 1952)). "The effect of applying the alter ego doctrine . . . is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound[.]" *Id.* (quoting *Shamrock Oil & Gas Co. v. Ethridge*, 159 F. Supp. 693, 697 (D. Colo. 1958)). *Dudley* held that the defendant who served as president, chairman of the board, and de facto stockholder of the corporation was

the alter ego of the corporation and therefore bound by the prior litigation against the corporation. *Id.*; *see also Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc.*, 274 Fed. Appx. 399, 400 n.1 (5th Cir. 2008) (per curiam) (treating individual and his incorporated business as the same entity for purposes of issue preclusion because they were in privity).

Godwin Pappas has not established beyond peradventure that the AmeriFirst Clients controlled the criminal trial of Bruteyn. There is no evidence, for example, that the AmeriFirst Clients chose the legal theories and proof to be advanced at trial or decided whether to obtain review. And while Bruteyn had a close relationship with the AmeriFirst Clients (he served as the Managing Director and Vice President of certain entities), his relationship was not as close as the one identified in *Dudley* to warrant a conclusion (beyond peradventure) that he was an alter ego of the AmeriFirst Clients. Accordingly, Godwin Pappas has not met the fourth nonparty exception.

D

Godwin Pappas maintains that Reneker is barred by the doctrine of issue preclusion from litigating the AmeriFirst Clients' knowledge due to the Disgorgement and Penalties Opinion.

Godwin Pappas contends that the court determined in the SEC Enforcement Action that "1) Bruteyn's securities violations were egregious, not only due to the sheer number of misrepresentations he made when selling the [C]SDOs but also due to their nature; and 2) given his sophistication and familiarity with securities markets, he must have known that his misrepresentations were seriously misleading or false." Ds. Br. 23. It asserts that "[b]ased

- 45 -

on those findings and others, the Court determined that Bruteyn and the AmeriFirst Clients violated § 10(b) of the Exchange Act, meaning they defrauded or deceived others and thereby caused them to suffer substantial losses." *Id.* Godwin Pappas cites only part of the Disgorgement and Penalties Opinion in support.[20]

The court declines to accept Godwin Pappas' reading of the Disgorgement and Penalties Opinion. Although AmeriFirst Funding and AmeriFirst Acceptance were defendants and American Eagle was a relief defendant in the SEC Enforcement Action, the Disgorgement and Penalties Opinion specifically applied to Bruteyn and Hess Financial Corp. ("Hess Financial"). *See* Disgorgement and Penalties Opinion, 2008 WL 1959843, at *1. The court did not hold "that Bruteyn and the AmeriFirst Clients violated § 10(b) of the Exchange Act," as Godwin Pappas asserts. *See* Ds. Br. 23. Instead, it considered the SEC's application for "a final judgment quantifying the disgorgement award against both Bruteyn and Hess Financial and for third-tier civil penalties against Bruteyn." Disgorgement and Penalties Opinion, 2008 WL 1959843, at *1. The court held, as to the civil penalty, that "Bruteyn is subject to a third-tier civil penalty under § 21(d) of the Exchange Act because his violations of § 10(b) of the Exchange Act involved fraud or deceit." *Id.* at *7. It then

_____

[20]Godwin Pappas does not assert that issue preclusion applies based on a judgment against *the AmeriFirst Clients*. Instead, it presents only decisions against Bruteyn and Bowden. At one point, in arguing that issue preclusion should apply to the Bruteyn Criminal Case, Godwin Pappas states that "[t]he SEC did sue the AmeriFirst Clients, which resulted in this Court's finding that they were liable for securities fraud based on Bruteyn and Bowden's actions, omissions and knowledge." Ds. Br. 22. Because Godwin Pappas does not cite evidence in support of this proposition, the court declines to rely on it in deciding the summary judgment motion.

concluded that a $2,000 penalty for each investment received, totaling $1,178,000, was warranted, because, *inter alia*, Bruteyn's securities-law violations were egregious and he must have known that his misrepresentations were seriously misleading. *See id.* at *8-9. Although the Disgorgement and Penalties Opinion contains much more than just these few findings regarding the civil penalty, and the SEC Enforcement Action includes more than this single opinion, Godwin Pappas relies only on this part of the opinion to argue that Reneker is precluded "from alleging that the AmeriFirst Clients did not knowingly violate the securities laws." Ds. Br. 23.

Reneker opposes Godwin Pappas' reliance on the Disgorgement and Penalties Opinion on several grounds, including contending that he and the AmeriFirst Clients were neither parties to the ruling against Bruteyn and Hess Financial nor in privity with such parties. The court agrees that, although the AmeriFirst Clients were defendants and relief defendants in the SEC Enforcement Action, the AmeriFirst Clients were not parties to the decision because the ruling applied specifically to Bruteyn and Hess Financial. Similar to the court's conclusion above, the court also holds that Godwin Pappas has failed to establish beyond peradventure that a nonparty exception applies to the AmeriFirst Clients and, in turn, to Reneker. Although Godwin Pappas has presented Reneker's deposition testimony that he is not attempting "to go behind" the court's judgments in the SEC Enforcement Action, Ds. Reply 2 (quoting Ds. July 25, 2011 App. 38), this does not mandate the conclusion that he agreed to be bound by the judgments, just that he "d[id]n't have any basis to question that finding," Ds. July 25, 2011 App. 38. And Godwin Pappas has not made the required

- 47 -

summary judgment showing that there is a pre-existing substantive legal relationship between the AmeriFirst Clients and Bruteyn, that Bruteyn adequately represented the AmeriFirst Clients' interests, that the AmeriFirst Clients assumed control of this litigation, that the AmeriFirst Clients are now designated representatives of Bruteyn, or that a statutory scheme forecloses successive litigation by nonlitigants. *See Taylor*, 553 U.S. at 893-95.

Accordingly, the parts of the Disgorgement and Penalties Opinion on which Godwin Pappas relies do not entitle it to summary judgment based on issue preclusion.

E

In summary, because Godwin Pappas has failed to establish beyond peradventure that a nonparty exception applies to the AmeriFirst Clients, the court declines to accord preclusive effect to the Bruteyn Criminal Case and the Disgorgement and Penalties Opinion.

VIII

Godwin Pappas also moves for summary judgment on the ground that Bowden was aware of the unlawful activity, that his knowledge should be imputed to the AmeriFirst Clients, and that such knowledge negates the elements of breach and causation.

A

Godwin Pappas posits that Bowden "knew they were misappropriating investor funds, defrauding investors, and otherwise violating securities laws during the time Defendants[] represented them," and that "Bowden's knowledge of fraudulent and illegal activities [should] be imputed to th[e AmeriFirst C]lients." Ds. Br. 24, 26. It relies on several types

of evidence to support this argument.[21]  Rather than point to the absence of evidence to support these two elements of Reneker's claim, Godwin Pappas essentially seeks to negate the elements of breach and causation by establishing that Bowden knew of the securities violations and that this knowledge should be imputed to the AmeriFirst Clients.  Even if the heavy beyond peradventure standard does not apply, Godwin Pappas must at least demonstrate the absence of a genuine issue of material fact with respect to these two elements.  *See Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

## B

Godwin Pappas first relies on evidence derived from Bowden's deposition testimony and his brief in support of a motion to withdraw and amend deemed admissions in the SEC Enforcement Action.  Despite Bowden's statements, a reasonable trier of fact could find on the present summary judgment record that he did not know he was acting unlawfully.  For example, Godwin Pappas argues that "Bowden admit[ted] read[ing] and sign[ing] documents in connection with the sale of AmeriFirst securities that misrepresented to investors the

---

[21]Reneker objects on several grounds to each type of evidence.  *See* P. Mot. Strike 7-8. The court need not address the objections because, even if the evidence is considered, Godwin Pappas is not entitled to summary judgment.

nature of their investment," and that "[h]e signed statements without concern for their accuracy." Ds. Br. 24. But this evidence does not require the trier of fact to find that, when Bowden read and signed the documents, he knew they made misrepresentations.[22] Godwin Pappas has therefore failed to demonstrate the absence of a genuine issue of material fact.

## C

Godwin Pappas also maintains that "Bowden signed a Model Accredited Investor Exemption, wherein he swore under oath that he would only be selling AmeriFirst securities

---

[22]Godwin Pappas' other arguments are also insufficient to support summary judgment. Godwin Pappas maintains that Bowden admitted in his deposition that the securities were not guaranteed by a commercial bank, which conflicts with the representations in the offering documents. Bowden averred, however, that he had brought this up to Bruteyn, who "told [him] that the license that American Eagle had was the equivalent of a commercial bank license," and he "trusted [Bruteyn's] compliance training and that [Bruteyn] knew how to keep us out of trouble." Ds. July 25, 2011 App. 436. This evidence would permit a reasonable trier of fact to find that Bowden was unaware that his conduct was unlawful because he trusted Bruteyn.

Godwin Pappas also contends that Bowden "concede[d] that neither the Lloyd's of London policy nor the Western surety bonds protected customer accounts or receivables, as represented in those materials," that Bowden "admit[ted] the investor notes were not protected by collateral as represented and that he took no steps to pledge the collateral to protect investors as promised," and that, while Bowden "promised . . . investor[s] that the funds would be maintained in separate accounts," "he did not place each investor[s]'[] money in a separate account for that investor." Ds. Br. 24-25. Even assuming the truth of the deposition testimony on which Godwin Pappas relies, it does not resolve whether Bowden knew of the impropriety of these actions at the time Godwin Pappas had a duty to advise the AmeriFirst Clients, or knew after-the-fact. See Ds. July 25, 2011 App. 419-22, 429, 435-36, 439, 444, 464-65, and 472-73.

Godwin Pappas also posits that, although Bowden promised to "invest[] only in specified, low-risk investments" in Servicing Agreements signed with each investor, he "invest[ed] in foolish, high-risk investments, and self-dealing investor funds." Ds. Br. 25. Godwin Pappas points to Bowden's statements regarding allegedly foolish purchases made with investor funds. But it fails to cite where the Security Agreements made such representations.

to accredited investors in Texas," and that, despite this, "he continued selling them to unaccredited Texas investors for well over a year after signing that form." *Id.* at 25. Godwin Pappas only cites a document entitled "Model Accredited Investor Exemption," which Bowden signed on behalf of AmeriFirst Acceptance. Bowden represented in the document that "[s]ales of securities shall be made only to accredited investors as defined in 17 CFR 230.501(a)." Ds. July 25, 2011 App. 489 and 491.

Godwin Pappas cites no evidence, however, in support of the proposition that Bowden sold CSDOs to unaccredited investors. Without such evidence, Godwin Pappas has failed to carry its summary judgment burden of establishing that Bowden was aware of any unlawful activity. Moreover, the only evidence that the court has found in Godwin Pappas' appendixes regarding sales to unaccredited investors is the testimony of Reneker. But Reneker testified that he did not know whether CSDOs were sold to unaccredited investors. *See id.* at 83 (answering "I do not know" in response to question whether "Bruteyn. . . was in the process of selling securities in Texas to unaccredited investors") and 91 ("I don't know about unaccredited."). Godwin Pappas has therefore failed to meet its summary judgment burden in this respect.

D

Godwin Pappas also relies on a letter that Bowden sent in March 2007 to an investor, allegedly from Florida, asserting that the letter is "filled with . . . misrepresentations." Ds.

Br. 25.[23]  According to Godwin Pappas, the letter was sent "several months after the Florida Office of Financial Regulation advised Bowden and Bruteyn that it was investigating the accuracy of representations made to investors in connection with the sale of AmeriFirst securities," suggesting that Bowden then knew of the unlawful activity.  *Id.*  Godwin Pappas does not, however, cite evidence regarding the scope of the Florida Office of Financial Regulation's investigation and whether it was communicated to Bowden that the investigation involved the accuracy of representations made to investors in connection with the sale of AmeriFirst securities.[24]  Godwin Pappas has therefore failed to demonstrate the

---

[23]It quotes the following from the letter:

> In addition to the guarantee of your entire investment by AmeriFirst and its affiliates, this investment will be covered by the servicing agreement of that same date.  All of the collateral for your investment is either A+ or better rated by Standard and Poors, or it is collateral insured with a single interest policy by Lloyd's of London.  In addition to the single interest insurance on our entire note portfolio, American Eagle Acceptance Corporation, the servicer of our accounts, carries a fraud and dishonesty bond with Western Surety Corporation which covers your account from fraud and theft up to $100,000 per transaction.

Ds. Br. 25-26 (quoting Ds. July 25, 2011 App. 492).

[24]Reneker also does not address this point in his response brief.  He alleges in his fourth amended complaint that

> around November 2006, Offill became aware that the Florida State Securities Board was also making inquiries as to the activities of the AmeriFirst Clients regarding the offerings.  As a result, at least as early as November 2006, Defendants knew or should have known that their clients were not entitled to rely

absence of a genuine issue of material fact on this basis.

E

Because Godwin Pappas must at least demonstrate the absence of a genuine issue of material fact regarding the elements of breach and causation of Reneker's professional negligence claim, and it has not met this burden on the present summary judgment record, it is not entitled to summary judgment on this basis.[25]

IX

Godwin Pappas maintains that, based on statements made by Brown, the receiver in the SEC Enforcement Action, Reneker is barred by judicial estoppel from contending that "the AmeriFirst Clients did not intentionally mislead or victimize investors." *Id.* at 29.

---

    upon any intrastate exemption from state and federal securities
    laws which regulate public offerings of securities, and that
    Offill's statement to the TSSB that the securities were sold only
    in Texas was false.

4th Am. Compl. ¶ 43.  Assuming that the parties are referring to the same entity (Reneker refers to the "Florida State Securities Board" and Godwin Pappas to the "Florida Office of Financial Regulation"), the allegation of Reneker's fourth amended complaint is not summary judgment evidence.  *See Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings . . . are not, of course, competent summary judgment evidence.").

    [25]The court recognizes that Bowden has now been convicted of securities fraud and mail fraud.  *See infra* § XII(C).  Without suggesting that Bowden's conviction and the evidence offered at his criminal trial change the result reached today, the court notes that its decision is based on the summary judgment record and briefing presented in support of Godwin Pappas' present motion.

A

Federal law governs the application of judicial estoppel in federal courts.  *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003) (holding that federal courts sitting in diversity are to apply federal law regarding judicial estoppel).  Because judicial estoppel is an affirmative defense, the party invoking it—here, Godwin Pappas—bears the burden of proof.  *See Wright v. Sears Roebuck & Co.*, 2010 WL 6032803, at *4 (W.D. La. Oct. 19, 2010) (citing *U.S. for Use of Am. Bank v. C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 258 (5th Cir. 1991)).  At the summary judgment stage, it must meet this burden beyond peradventure.

Under the doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)) (internal quotation marks omitted); *see also, e.g., In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) ("Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position[.]'") (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)).  "The purpose of the doctrine is 'to protect the integrity of the judicial process', by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest[.]'"  *Coastal Plains*, 179 F.3d at 205 (alteration in original) (quoting *Brandon*, 858 F.2d at 268);

*see also New Hampshire*, 532 U.S. at 749.  Because judicial estoppel is an equitable doctrine, "the decision whether to invoke it [is] within the court's discretion."  *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011) (alteration in original) (quoting *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008)).  "[C]ourts may apply [the doctrine] flexibly to achieve substantial justice."  *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011) (en banc).

The Fifth Circuit has "outlined three requirements for judicial estoppel": "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently."  *Reed*, 650 F.3d at 574; *Tex. Wyo. Drilling*, 647 F.3d at 552 (citing *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004)).

Godwin Pappas contends that judicial estoppel bars Reneker from "contending that the AmeriFirst Clients, Bowden, and Bruteyn innocently or unintentionally defrauded investors" because "Brown reported to the Court that they intentionally defrauded and victimized investors."  Ds. Br. 27.  It maintains that Reneker and Brown are in privity and that Brown's statements bind Reneker.  Godwin Pappas reasons that they "are effectively the same party" or "alter egos" because they are "[b]oth arms of the Court," Brown would have prosecuted this case "if it weren't for his conflict of interest," and both "are receivers collaborating to recover and distribute funds to the investors who were victimized by the AmeriFirst Clients' fraud."  *Id.*  Godwin Pappas cites statements by Brown that it maintains

bind Reneker.[26]

## B

First, Godwin Pappas contends that Brown cosponsored a motion in the SEC Enforcement Action, which the court granted, requesting the appointment of Reneker as a special receiver.  In support of the motion, Brown and the SEC stated that "Receivers are appointed upon a *prima facie* showing of fraud and mismanagement of investor funds where (i) a receiver is necessary to obtain an accurate picture of the nature, amounts and whereabouts of misappropriated investor funds or (ii) there is a risk of further dissipation of investor funds," and then represented that "Both factors necessitating the appointment of a receiver are present."  *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, at 2-3 (N.D. Tex. May 8, 2008) ("Motion to Appoint Special Receiver").

Godwin Pappas has not established beyond peradventure that judicial estoppel applies, because a reasonable trier of fact could find that Reneker is not asserting a conflicting position.  *See Tex. Wyo. Drilling*, 647 F.3d at 552 (holding that "clearly inconsistent positions" is a "requirement[] for judicial estoppel.").  Reneker does not contest that a misappropriation occurred; he admitted in his deposition not having any basis to dispute that the AmeriFirst Clients misappropriated funds.  *See* Ds. July 25, 2011 App. 45.  He contends, however, that misappropriation is irrelevant to his right to recover because it "does not save

---

[26]Because the court concludes on other grounds that Godwin Pappas is not entitled to summary judgment, it need not decide whether under the doctrine of judicial estoppel a statement by one party can bar a party in privity.

- 56 -

Defendants from their negligent legal advice that caused AmeriFirst Clients to violate the law and incur liabilities they were not equipped to satisfy," and that "[t]he malpractice is separate and distinct from any misappropriation." *See* P. Br. 37, 48.

C

Second, Godwin Pappas posits that Brown filed a preliminary report in the SEC Enforcement Action in which he stated that "[i]t strongly appears to the Receiver that Defendants Bruteyn and Bowden, individually and through counsel, made material misrepresentations to investors, regulatory authorities and the Receiver about the security of the notes sold to investors, by falsely representing that the notes were backed by insurance policies and guarantees." *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, at 5 (N.D. Tex. July 23, 2007) ("Brown Preliminary Report").   Godwin Pappas contends that "[s]eemingly based on Receiver Brown's reports and the evidence he proffered with them [and] among other things," the court in the SEC Enforcement Action "entered temporary and permanent injunctions against Bruteyn, Bowden, and the AmeriFirst Clients," "entered a judgment finding them liable for securities fraud," and "disgorg[ed] their fraudulent scheme's ill-gotten gains." Ds. Br. 28.

Godwin Pappas has failed to establish beyond peradventure that the court in the SEC Enforcement Action accepted the statements in the Brown Preliminary Report.  This alone is sufficient to reject the application of judicial estoppel.  *See Tex. Wyo. Drilling*, 647 F.3d at 552 (holding that "the court's acceptance of the previous position" is a "requirement[] for judicial estoppel.").

- 57 -

Godwin Pappas points to the court's opinion in the SEC Enforcement Action in which the court largely granted the SEC's application for a preliminary injunction. *See SEC v. AmeriFirst Funding, Inc.*, 2007 WL 2192632, at *1 (N.D. Tex. July 31, 2007) (Fitzwater, J.). In doing so, the court stated that its conclusion was based on "the SEC's briefing and its voluminous evidentiary appendix." *Id.* at *4. The opinion does not indicate whether the court relied on the statements in question.

Godwin Pappas also cites two parts of the Disgorgement and Penalties Opinion issued in the SEC Enforcement Action, neither of which supports the conclusion that the court accepted the statements in the Brown Preliminary Report. The first part includes the factual background of the opinion. Disgorgement and Penalties Opinion, 2008 WL 1959843, at *1. The court stated, however, that it "relie[d] on the well-pleaded facts alleged in the SEC's first amended complaint" in "recounting the facts." *Id.* at 2 n.2. The second part examined whether the court should impose a third-tier civil penalty against Bruteyn and enjoin him from violating the securities laws. *Id.* at *8-9. The court mentioned the Receiver once, stating that Bruteyn's conduct caused an estimated loss of $10 to $20 million according to "previous representations of the Receiver." *Id.* at *8 n.6. The court did not indicate whether it otherwise relied on or accepted the Brown Preliminary Report.

Finally, Godwin Pappas refers to judgments against Bruteyn, Bowden, and AmeriFirst Funding. But these judgments do not support the finding that the court accepted the statements in the Brown Preliminary Report.

Accordingly, the court holds that Godwin Pappas has failed to establish beyond

peradventure that judicial estoppel is warranted based on Brown's statements in the Brown Preliminary Report.

D

Third, Godwin Pappas contends that in a lawsuit ("Cooley Action") against Cooley Enterprises, Inc. ("Cooley"), Brown alleged that the AmeriFirst Clients and Cooley transacted a fraudulent transfer. *See* Ds. Br. 29 (citing *Brown v. Cooley Enters., Inc.*, No. 3:11-CV-0124-D (N.D. Tex. Feb. 9, 2011) ("Am. Cooley Compl.")). Specifically, Brown alleged, "on behalf of the Receivership Estate creditors (defrauded investors)," that American Eagle and AmeriFirst Funding "paid $5,685,247.68 to Cooley for the receivables," that the money "can be traced to investor monies," that American Eagle and AmeriFirst Funding "were insolvent at the time of the transfers," and that "Cooley did not provide reasonably equivalent value." Am. Cooley Compl. ¶¶ 50-53. Godwin Pappas argues that this conflicts with Reneker's statements "that those same losses were *not* caused by the AmeriFirst Clients' fraud, but by Defendants' alleged malpractice." Ds. Br. 29 (emphasis in original). Even assuming *arguendo* that this is sufficient to establish that Reneker is asserting a clearly or plainly inconsistent position, Godwin Pappas does not adequately address whether the court in the Cooley Action accepted Brown's allegations. Because Godwin Pappas bears the burden of proof and this is a "requirement[] for judicial estoppel," the court holds that Godwin Pappas has failed to demonstrate beyond peradventure that judicial estoppel applies based on the allegations made in the Cooley Action. *See Tex. Wyo. Drilling*, 647 F.3d at 552.

In summary, Godwin Pappas is not entitled to summary judgment based on judicial

estoppel as to all three grounds on which it relies.

X

Godwin Pappas contends that it is entitled to summary judgment because Reneker cannot show that Godwin Pappas' conduct proximately caused the AmeriFirst Clients' damages.

Godwin Pappas asserts, first, that "the AmeriFirst Clients' egregious misappropriation of investor funds, along with Bruteyn and Bowden's outright embezzlement of those funds, were the *only* proximate causes of Plaintiff's alleged damages" because "[i]f the [investors'] funds . . . ha[d] been properly maintained and managed by the AmeriFirst Clients and not misappropriated, squandered, and embezzled, there would be no increased liabilities to investors."  Ds. Br. 33-34 (emphasis in original); *see also* Ds. Reply 13 arguing that its alleged "negligence would not have caused the investors to lose their funds," and asserting that "[i]t was AmeriFirst Acceptance and AmeriFirst Funding's commingling and misappropriation of those funds that caused the losses or liabilities").  Godwin Pappas posits, second, that "[Reneker] can provide no evidence that [the] false information given to the TSSB forestalled its investigation, thereby causing or allowing for additional investor losses or 'increased liabilities.'" Ds. Br. 38 (criticizing "[o]ne of Plaintiff's primary theories . . . that Defendants provided false information to the TSSB in a September 11, 2006 letter, which [allegedly] satisfied and staved off the TSSB, causing it to delay or cease its investigation and thereby allowed the AmeriFirst Clients to continue selling securities and to increase their investor liabilities").

Both of these arguments pertain to whether Godwin Pappas proximately caused the AmeriFirst Clients to incur liabilities *to investors* or increased such liabilities. The court has already dismissed Reneker's professional negligence claim for lack of standing to the extent it is based on liabilities that the AmeriFirst Clients incurred to investors, or increased such liabilities. And this component of Godwin Pappas' motion does not relate to the only remaining injury for which Reneker has standing—the incurred or increased liabilities owed by the AmeriFirst Clients *to professional creditors*. The court therefore denies summary judgment on this basis, in part as moot and in part on the merits.

XI

Godwin Pappas also moves for summary judgment based on the affirmative defense of *in pari delicto*.

A

"*In pari delicto* is an equitable, affirmative defense, which is controlled by state common law." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965 (5th Cir. 2012) )(per curiam); *see also In re IFS Fin. Corp.*, 2007 WL 1308321, at *3 (Bankr. S.D. Tex. May 3, 2007) ("Whether the Trustee's claim is barred by the *in pari delicto* defense is governed by Texas law."). In Texas, *in pari delicto* is also called the unlawful acts doctrine. *See, e.g., Gladu v. Wallace*, 2003 WL 2010946, at *2 (Tex. App. May 1, 2003, no pet.) (not designated for publication). Under this doctrine, "no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party[.]" *Gulf,*

*C. & S. F. Ry. Co. v. Johnson*, 71 Tex. 619, 9 S.W. 602, 603 (1888).

Godwin Pappas bears the burden of proving the affirmative defense of *in pari delicto*. *Cf. Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008) (holding that "*in pari delicto* is an affirmative defense"); *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 501-02 (Tex. App. 2008, no pet.) (holding that illegal contracts are unenforceable because of "the maxim, In pari delicto portior est conditio defendantis," and that "[i]llegality is an affirmative defense, and the burden is on the defendant to plead and prove the illegality"). At the summary judgment stage, Godwin Pappas must meet this burden beyond peradventure.

Godwin Pappas contends that Reneker is barred from asserting the professional negligence claim because the AmeriFirst Clients knowingly and willfully engaged in unlawful acts that contributed to the asserted injury. In support, Godwin Pappas refers principally to the Bruteyn Criminal Case. It also points to Reneker's deposition testimony, arguing that "[Reneker] conced[d] . . . that Bruteyn and Bowden would have known that it was illegal to defraud investors." Ds. Br. 31.

Reneker responds that the AmeriFirst Clients did not knowingly and willfully engage in unlawful acts and that any wrongful acts that Bowden and Bruteyn committed should not be imputed to the AmeriFirst Clients. He also relies on public policy to contend that receivers are not subject to the *in pari delicto* defense because they act for the benefit of

innocent third parties.[27]

B

Godwin Pappas has not established the affirmative defense of *in pari delicto* beyond peradventure.  Godwin Pappas maintains that Reneker's suit is barred because Bruteyn and Bowden knowingly and willfully engaged in unlawful acts and the AmeriFirst Clients stand *in pari delicto* to Godwin Pappas.  Assuming *arguendo* that Godwin Pappas has presented evidence that demonstrates beyond peradventure that Bruteyn and Bowden knowingly and willfully engaged in unlawful acts, the defense fails under *Jones*.  This is so because Godwin Pappas's argument "fails to acknowledge the important distinction between [the AmeriFirst Clients] as a corporation and [Bruteyn or Bowden] as an individual." *Jones*, 666 F.3d at 965.  Under *Jones*, even if Bruteyn and Bowden are *in pari delicto* with Godwin Pappas, it does not follow that the AmeriFirst Clients are as well, because "a corporation is a distinct entity separate from its stockholders, officers and directors." *Id.* at 965 (quoting *Wynne v. Adcock Pipe & Supply*, 761 S.W.2d 67, 68 (Tex. App. 1988, writ denied) (internal quotation marks omitted); *see also Gladu*, 2003 WL 2010946, at *4 (holding that although individual admitted in plea agreement that he committed offense, no evidence that *in pari delicto*

---

[27]Reneker also contends that the application of *in pari delicto* is premature because the parties have been unable to depose Bowden until the conclusion of his criminal trial (which has by now occurred).  He also moves for leave to supplement the summary judgment evidence with filings related to Bowden's criminal prosecution and conviction.  The court denies the motions as moot because the court is ruling in Reneker's favor on the *in pari delicto* defense.

- 63 -

applied to corporation in which individual was sole owner and president).[28]   Furthermore, "[t]he distinction between a corporation and its officers or agents is reinforced by the appointment of a receiver," who "acts on behalf of the corporation as a whole." *Jones*, 666 F.3d at 966.[29]  And applying *in pari delicto* would undermine a receivership if it were to bar a "suit on behalf of [a corporation] to recover funds for defrauded investors and other innocent victims." *Id.*  Reneker is pursuing this suit on behalf of the AmeriFirst Clients, and any recovery will be turned over to the Receivership Estate for distribution to defrauded investors and other innocent victims.[30]

Accordingly, the court holds that Godwin Pappas has failed to establish beyond peradventure the affirmative defense of *in pari delicto*.

_____

[28]Even if Godwin Pappas were to argue that the AmeriFirst Clients was comprised solely of Bowden and Bruteyn so that their actions are considered one and the same as those of the AmeriFirst Clients, *Jones* makes clear that a corporation is separate and distinct from the individuals who operate the company, even if few do so.

[29]Godwin Pappas contends that "*in pari delicto* could preclude a receiver's claims when the defendants did not receive any portion of the misappropriated or embezzled funds and did not benefit from the fraud." Ds. Reply 21.  In *Jones*, however, the defendant did not receive "benefit from the fraud" as a recipient of "misappropriated or embezzled funds," yet the Fifth Circuit still held that the plaintiff did not stand *in pari delicto* with the defendant due to unlawful acts by the plaintiff's agent, Wahab.  *See Jones*, 666 F.3d at 966.

[30]This is not inconsistent with the court's conclusion *supra* at § III that Reneker has standing to bring this claim on behalf of the AmeriFirst Clients because he is seeking to recoup the liability incurred or increased by the professional creditors, which is distinct from investor losses.  Here, the court recognizes that Reneker is acting on behalf of the AmeriFirst Clients.  Any recovery, however, will be turned over to the Receivership Estate for possible distribution to creditors, including investors.  This possibility does not mean that Reneker is suing on behalf of the investors.  *See supra* at note 5.

XII

The court now addresses other pending motions.

A

The first three motions that the court considers were filed by Reneker.  On August 25, 2011 Reneker filed a motion to defer consideration of defendant's summary judgment motion or, in the alternative, a motion for continuance, until he obtained affidavits from four witnesses and deposed Bowden.  On November 2, 2011 Reneker filed an amended motion for leave to supplement the summary judgment appendix to add Robert Clark's amended affidavit, which corrected errors in the original affidavit.  And on February 20, 2012 Reneker filed a motion for leave to supplement the summary judgment appendix with the affidavit of Kirshbaum.

The court denies these motions as moot.  Even if the court considered the materials in question, it would still rule in Reneker's favor insofar as the materials are pertinent to the summary judgment issues.

B

The parties have also filed motions to strike the opposing party's evidence.  Reneker filed his objection to and motion to strike defendants' summary judgment evidence on September 21, 2011.  Godwin Pappas filed its objection to and motion to strike plaintiff's summary judgment evidence on October 19, 2011.  Many objections are immaterial because the court did not rely on the evidence in question in making its decisions; the court has otherwise addressed any relevant objections in this memorandum opinion and order.

- 65 -

C

On December 21, 2011, after Godwin Pappas filed its summary judgment motion, a jury convicted Bowden of four counts of securities fraud and five counts of mail fraud, and acquitted Bowden as to the remaining counts.  *See United States v. Bowden*, No. 3:10-CR-152-M (N.D. Tex. Dec. 21, 2011) (Bowden verdict).  On January 6, 2012 Godwin Pappas filed a motion for leave to supplement the summary judgment evidence with filings related to Bowden's conviction.   Godwin Pappas seeks to supplement the summary judgment evidence with the superseding indictment,[31] court's charge, and verdict in Bowden's criminal case.  It contends that, by finding Bowden guilty, the jury necessarily found that he had acted knowingly and willfully in allowing the AmeriFirst Clients' CSDOs to be sold through fraudulent misrepresentations.  It also maintains that Godwin Pappas' legal advice was an issue in the criminal case because Bowden raised an advice-of-counsel defense based on Godwin Pappas' legal representation, but it was rejected by the trial judge, who declined to instruct the jury on the defense.  Godwin Pappas maintains that these findings bar Reneker under issue preclusion from contending that Bowden was unaware of the unlawful conduct, and that they support the defense of *in pari delicto*.  Reneker opposes the motion on several grounds.

The court treats Godwin Pappas' motion for leave to supplement the summary

---

[31]Bowden was charged by superseding indictment filed on October 19, 2011 with nine counts of securities fraud, in violation of § 10(b) of the Exchange Act, and nine counts of mail fraud, in violation of 18 U.S.C. § 1341.  *United States v. Bowden*, No. 3:10-CR-152-M, at 8-11 (N.D. Tex. Oct. 19, 2011) (Bowden superseding indictment).

judgment evidence as a motion for leave to file a second summary judgment motion and, in its discretion, grants the motion.  Given that Bowden's conviction occurred after Godwin Pappas filed the instant motion for summary judgment, the court concludes that Godwin Pappas should be able to seek summary judgment based on a conviction that had not occurred and that could serve as a basis for obtaining summary judgment.  Moreover, "it is more efficient, potentially less costly to the parties, and possibly less burdensome to the court and to jurors to determine whether [Reneker's claim] can be resolved by summary judgment before trying it."  *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2006 WL 1096777, at *7 (N.D. Tex. Apr. 26, 2006) (Fitzwater, J.).[32]  Accordingly, Godwin Pappas may file a motion for summary judgment based on Bowden's conviction.[33]

---

[32]The court suggests no view, of course, on the merits of such a motion, including whether any count of conviction other than count 6 (for securities fraud), which occurred on or about February 21, 2007, falls within the time frame relevant to the instant suit.

[33]The court does not intend that Godwin Pappas use this second filing as an opportunity to rectify defects in its present summary judgment motion.  As the court explained in *Home Depot U.S.A., Inc. v. National Fire Insurance Co. of Hartford*, 2007 WL 1969752 (N.D. Tex. June 27, 2007) (Fitzwater, J.), N.D. Tex. Civ. R. 56.2(b), which limits the number of summary judgment motions, "enables the court to regulate successive motions that are filed after the court has devoted time and effort to deciding an initial motion and has identified issues that are not subject to summary disposition, but as to which the movant seeks a second bite at the apple."  *Home Depot*, 2007 WL 1969752 at *2.  Nevertheless, Godwin Pappas may include in the second motion any ground for summary judgment supported by Bowden's criminal conviction, even one that the court rejects today but that Godwin Pappas maintains now has merit in light of Bowden's criminal conviction.

D

On March 9, 2012 Godwin Pappas filed a motion for leave to file a second summary judgment motion.  Godwin Pappas contends that on October 7, 2011, after it filed its summary judgment motion, Reneker disclosed for the first time in amended interrogatory responses and amended Rule 26 disclosures that he seeks to recover $5.6 million in business creditor liabilities and $6.9 million in professional creditor liabilities.  Godwin Pappas asserts that there is no evidence to demonstrate that its allegedly negligent legal representation caused these damages, and it seeks leave to file a second summary judgment motion addressed to the damages claims.

Godwin Pappas has attached a draft of the second summary judgment motion that it seeks leave to file.  In it, Godwin Pappas first requests summary judgment to the extent Reneker's professional negligence claim is brought on behalf of American Eagle for liabilities that were incurred or increased to business creditors.[34]  The court has already concluded above that Reneker lacks standing to assert a claim for liabilities incurred by AmeriFirst Clients to business creditors, or for the increased amounts of such liabilities.  *See supra* § IV(B)(4).  Accordingly, to the extent Godwin Pappas seeks leave to file a second

---

[34]While Godwin Pappas' heading—"Plaintiff has articulated no theory and adduced no evidence to support any claim that American Eagle suffered damages," Ds. Br. 6—would appear to address both business and professional creditor liabilities, it is clear from Godwin Pappas' supporting arguments that its basis relates only to business creditor liabilities. Godwin Pappas argues that Reneker has failed to present evidence regarding which AmeriFirst Client incurred the business creditor liabilities, how the liabilities were incurred and calculated, and how its actions caused the business creditor liabilities.

summary judgment motion addressed to such a claim, the court denies the motion as moot.

In its proposed summary judgment motion, Godwin Pappas also contends that Reneker has offered no evidence demonstrating how the professional creditor liabilities were calculated or how Godwin Pappas' alleged professional negligence caused the professional fees to be incurred.[35]  Because the court is granting Godwin Pappas leave to file a second summary judgment motion based on the Bowden conviction, it grants leave to include this ground.

Accordingly, the court grants in part, and denies in part as moot, Godwin Pappas' motion for leave to file a second summary judgment motion.

E

On May 18, 2012 Reneker filed a motion for leave to file a second supplemental brief in support of his response to defendants' motion for summary judgment.  Reneker seeks leave to assert arguments regarding Bowden's deposition testimony.  The court denies the motion as moot.  Even if the court considered the supplemental brief, it would still rule in Reneker's favor regarding the part of Godwin Pappas' motion for summary judgment that is being denied.  And because the court is granting Godwin Pappas leave to file a second

---

[35]Godwin Pappas also contends that because the business and professional creditor liabilities have been paid, Reneker should not be able to include them in his claim because to do so would result in an impermissible double recovery.  Recovery in this suit will be turned over to the Receivership Estate and distributed.  There is no basis for concluding that any creditor will receive a double recovery.

Godwin Pappas also contends that its inability to repay the defrauded investors is due to the AmeriFirst Clients' misappropriation.  The court has already rejected this argument and declines to revisit it.  *See supra* at § XI.

summary judgment motion, Reneker will have an opportunity to raise in response to that motion any pertinent arguments presented in the second supplemental brief.

* * *

For the reasons explained, the court grants in part and denies in part Godwin Pappas' July 25, 2011 motion for summary judgment; denies as moot Reneker's August 25, 2011 motion to defer consideration of defendant's summary judgment motion or, in the alternative, motion for continuance; overrules and denies Reneker's September 21, 2011 objection to and motion to strike defendants' summary judgment evidence and Godwin Pappas' October 19, 2011 objection to and motion to strike plaintiff's summary judgment evidence; denies as moot Reneker's November 2, 2011 amended motion for leave to supplement summary judgment appendix and February 20, 2012 motion for leave to supplement the summary judgment appendix with the affidavit of Kirshbaum; treats Godwin Pappas' January 6, 2012 motion for leave to supplement the summary judgment evidence as a motion for leave to file a second summary judgment motion and grants the motion; grants in part and denies in part as moot Godwin Pappas' March 9, 2012 motion for leave to file a second summary judgment

motion; and denies as moot Reneker's May 18, 2012 motion for leave to file a second supplemental brief.

**SO ORDERED.**

June 14, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE