IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| D. RONALD RENEKER, SPECIAL RECEIVER FOR AMERIFIRST FUNDING, INC., et al., | § § § § | |
| Plaintiff, | § § § | Civil Action No. 3:08-CV-1394-D |
| VS. | § § | |
| PHILLIP W. OFFILL, JR., et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The August 8, 2012 motion for reconsideration filed by plaintiff D. Ronald Reneker, Esquire ("Reneker") is denied.[1]

Reneker moves for reconsideration of part of the court's June 14, 2012 memorandum opinion and order. *See Reneker v. Offill*, 2012 WL 2158733 (N.D. Tex. June 14, 2012) (Fitzwater, C.J.) ("*Reneker IV*"). In *Reneker IV* the court, *inter alia*, dismissed Reneker's professional negligence claim for lack of standing to the extent it was based on liabilities

---

[1] "Motions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Arrieta v. Yellow Transp., Inc.*, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009) (Fitzwater C.J.) (internal quotation marks omitted and citation omitted). "Such motions are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Id.* (internal quotation marks omitted and citation omitted).

incurred to defrauded investors[2] or the increased amount of such liabilities. *Id.* at *6. These alleged liabilities arose out of the legal representation by defendants Phillip W. Offill, Jr. and Godwin Pappas Ronquillo, LLP, f/k/a Godwin Pappas Langley Ronquillo, LLP f/k/a Godwin Gruber, LLP (collectively, "Godwin Pappas," unless the context otherwise requires) of American Eagle Acceptance Corporation, AmeriFirst Funding, Inc. a/k/a Ameri-First Funding, Inc. a/k/a Ameri First Funding, Inc., and AmeriFirst Acceptance Corp. (collectively, the "AmeriFirst Clients"), for which Reneker is special receiver. Reneker challenges the dismissal of his professional negligence claim in his motion for reconsideration.

First, Reneker did not clearly state in his response brief to Godwin Pappas' motion for summary judgment that he intended to recover liabilities owed to defrauded investors,[3]

---

[2]In his motion for reconsideration, Reneker maintains that using the term "note holders" for the purchasers of the "Collateral Secured Debt Obligation Notes" is more appropriate than is the term "investors." But the court used the term "investors" in *Reneker IV* because Reneker used that term in his response brief to the motion for summary judgment. *See, e.g.*, P. Sept. 21, 2011 Resp. Br. 25 ("AmeriFirst Clients and related entities owe approximately $28 million to unsecured investors."). And even if "note holders" is a better term, the result remains the same. For clarity, and because the difference in terms is immaterial, the court will use the term "investors."

[3]In Reneker's response brief, he relies on the deposition testimony of William D. Brown ("Brown")—temporary receiver in the Securities and Exchange Commission enforcement action—to argue that the "damages to AmeriFirst Clients . . . are distinct from investor losses." P. Sept. 21, 2011 Resp. Br. 24. Brown testified, in pertinent part:

> By not having a stop put to that, that would add to this number, and it would have damaged the, let's call it the entities in the estate from the standpoint by allowing this investment flow to come into the companies, it gave them a very significant liability

nor did he disclose it in his amended interrogatory responses and amended Fed. R. Civ. P. 26 disclosures.[4] Even so, in deciding Godwin Pappas' summary judgment motion, the court assumed that Reneker intended to pursue liabilities owed to investors. The court concluded that Reneker lacked standing in this respect because his only evidence—the testimony of

>  with the attending interest that they didn't have the ability to meet that obligation. So, yes, by not putting a stop to this, that impacted this number . . . . let's assume that money — because it shut down that Mr. Bruteyn and Mr. Bowden didn't sell these investments, AmeriFirst — American Eagle Acceptance Corporation would never had to assume responsibility for an obligation to repay $55 million plus interest. Therefore, they would have probably rocked along running their two little car lots; and Mr. Bowden, I suspect, it would be my estimated guess is that Mr. Bowden would still be sitting in his office on Sylvan Avenue selling cars and financing cars.

*Id.* at 24-25 (quoting Ds. App. 125). Reneker then argued that Godwin Pappas undervalued "investor losses" by not including "lost interest and earning capacity of the[] money, mental anguish, and punitive damages." *Id.* at 25. Reneker maintains, however, that he "does not seek these damages." *Id.* Because Reneker did not clarify what he meant by "these damages," it was unclear whether he was rejecting "investor losses" or also was not seeking AmeriFirst Clients' liability owed to investors. And while Reneker then stated that the "AmeriFirst Clients and related entities owe approximately $28 million to unsecured investors," *id.*, this did not clarify whether he intended to pursue this liability owed to investors. Even so, the court considered Reneker's liability to defrauded investors.

[4]In Godwin Pappas' March 9, 2012 motion for leave to file a second summary judgment motion, they offered in evidence Reneker's amended interrogatory responses and amended Rule 26 disclosures. In both, Reneker stated that he seeks to recover $5.6 million in business creditor liabilities, $6.9 million in professional creditor liabilities, and around $35.8 million in "other liabilities incurred as a result of Defendants' negligence." Ds. Mot. Leave File 2d Summ. J. App. 180 (amended disclosures), 186 (amended interrogatories). Reneker neither explicitly states that he is seeking liabilities incurred to defrauded investors or the increased amount of such liabilities, nor does he clarify whether "other liabilities" refers to liabilities to defrauded investors.

William D. Brown ("Brown"), temporary receiver in the Securities and Exchange Commission ("SEC") enforcement action—consisted of a concession that investor losses and the AmeriFirst Clients' liability to investors were mathematically equivalent. Because this could only lead to the conclusion that investor losses were not distinct from investor liabilities, the court dismissed the professional negligence claim to the extent it was based on investor liabilities.

Second, in this motion Reneker principally relies on two cases to argue that "[m]alpractice claims for liabilities negligently created to note holders are different from claims of note holders." P. Br. 3 (emphasis omitted). But he did not introduce evidence that would enable the court to conclude that these cases are apposite.

In the first case, *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001), the Third Circuit held that a creditor's committee had standing to bring claims on behalf of debtor corporations in bankruptcy against third parties who allegedly fraudulently expanded the debtors' corporate debt and prolonged their corporate life. *See id.* at 344, 347-54. The Third Circuit characterized the injury as "deepening insolvency" and recognized it "as a valid theory giving rise to a claim under Pennsylvania law." *Id.* at 349-54. Even assuming that "deepening insolvency" suffices as an independent form of corporate injury in the Fifth Circuit, Reneker has neither sufficiently alleged, nor adduced evidence in his response to Godwin Pappas' motion for summary judgment or in his motion for reconsideration, that defendants fraudulently expanded corporate debt and prolonged corporate life, nor that defendants' actions were *to the AmeriFirst Clients'*

*detriment*. Instead, Reneker alleges that Godwin Pappas "negligently prolonged and perpetuated the *improper offering of securities* by the AmeriFirst Clients," causing "the AmeriFirst Clients to incur additional and unnecessary liabilities to third persons." 4th Am. Compl. ¶¶ 39-40 (emphasis added). Increased investments, however, do not necessarily deepen insolvency or harm a corporation, given that they infuse capital into the corporation. *See In re CitX Corp.*, 448 F.3d 672, 677 (3d Cir. 2006) ("Assuming for the sake of argument that [the] financial statements allowed CitX to raise over $1,000,000, that did nothing to 'deepen' CitX's insolvency. It did the opposite."); *In re Parlamat Sec. Litig.*, 501 F.Supp.2d 560, 574 (S.D.N.Y. 2007) ("[A] company's insolvency is not deepened simply by the incurrence of new debt where the company suffers no loss on the loan transaction."). Moreover, it is questionable how delayed insolvency harmed the AmeriFirst Clients, since Reneker has not pointed to evidence that delayed insolvency hindered their ability to function, *see Parlamat*, 501 F.Supp.2d at 576 ("Delay[ed insolvency] does not hinder [the corporation's] ability [to carry out functions]."), or that Godwin Pappas used the delayed insolvency to loot or otherwise harm the AmeriFirst Clients, *cf. Schacht v. Brown*, 711 F.2d 1344, 1347-48, 1350 (7th Cir. 1983) ("[T]he damage to [the corporation] stemmed not only from the mere extension of the normal business operations of [the corporation], but from specific actions crippling [the corporation] which were taken as an integral part of that extension."). A reasonable jury could only find from the evidence of record that the *creditors*, not the AmeriFirst Clients, were injured from delayed liquidation because the continued depletion of assets reduced their recovery. *See Parlamat*, 501 F.Supp.2d at 576

("[In cases where] liquidation is inevitable . . . [the harm caused by delayed bankruptcy filing is a] harm to the beneficiaries of that liquidation—the creditors.") (brackets in original) (quoting Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549, 566 (2005)).

Reneker also relies on *Scholes v. Stone, McGuire & Benjamin*, 821 F. Supp. 533 (N.D. Ill. 1993). In *Scholes*, an SEC enforcement action, a receiver was appointed for a company that had squandered many investments through a Ponzi scheme. *See id.* at 534. The court held that a receiver had standing to pursue claims against legal representatives of the corporation who had allegedly "substantially furthered the fraud and misrepresentation that gave rise to the original SEC Action." *Id.* at 534 & 536. In particular, the court reasoned:

> If the funds deposited by the investors into the Receivership Entities became funds belonging to the entities, then a claim of legal malpractice or breach of fiduciary duty resulting in the loss of those funds would sufficiently allege damage to those entities . . . . Thus, any wrongful actions of the defendants resulting in the loss of the funds invested in the Receivership Entities damaged the entities to the extent the loss is attributable to the wrongful acts.

*Id.* at 536-37. The court's analysis in *Scholes* emphasized whether the legal representatives' wrongful actions resulted in a *loss* of corporate funds, which would harm the corporation. But, as noted, Reneker has not adduced evidence that would enable a reasonable jury to find that Godwin Pappas' actions resulted in a *loss* of funds. Instead, a reasonable jury could only

find that it resulted in just the opposite—increased investments.[5]

Third, most of the evidence that Reneker relies on in response to Godwin Pappas' motion for summary judgment and in support of his motion for reconsideration relates to causation—i.e., whether Godwin Pappas' negligence caused the incurred, or the increased, liabilities owed to the defrauded investors.[6] The court dismissed the professional negligence claim to the extent it was based on such liabilities because they were not distinct from investor losses and therefore Reneker had failed to establish an injury to the AmeriFirst Clients. In other words, the issue was focused on the injury prong of standing, not the causation prong, which Reneker's evidence addresses. The court thus rejects Reneker's evidence to the extent it conflates injury with causation.

Reneker does cite to the testimony of expert Shannon Rusnak ("Rusnak"), who opined that investor losses could include "a lot of different things," such as the investment, interest not received, loss opportunity, mental anguish, and punitive damages, and averred that investor losses "can be very distinct and different" from liability to investors. P. App. 181. But in this instance Reneker is relying on new evidence, which need not be considered in a

---

[5]Reneker also presents new evidence of Dennis W. Bowden, who testified that defendants advised him that he could buy inventory with the money received from investors. But this does not address whether this advice resulted in the *loss* of funds.

[6]*See, e.g.*, P. Br. 5-6 (averment of expert Bruce Campbell that "Defendants' negligence was the cause in fact of harm to AmeriFirst Clients"); 6 (testimony of Brown that defendants' negligence resulted in "causing AmeriFirst Clients to take on more note holder creditors than they could cover and thus, become liable to third parties when they otherwise would not have"); 8 (testimony of expert Gary Durham that there is a causal link between defendants' negligence and the AmeriFirst Clients' liability to creditors).

motion for reconsideration. "A party is not entitled to have a summary judgment set aside on the basis of evidence not produced prior to summary judgment unless he demonstrates a valid excuse for the failure to produce the evidence prior to the court's summary judgment ruling." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1052 (5th Cir. 1996). Moreover, the testimony suggests that Rusnak was unsure how to define investor losses. Rusnak responded, "I don't know," before beginning to list possible forms of investor losses, and then, while giving the list, offered the caveat, "I'm not an attorney." P. App. 181. And further, the statement that investor losses "can be very distinct and different" from investor liability is conclusory, given that Rusnak does not substantiate this assertion. *See id.* Based on this evidence, the court is unable to conclude that there is a genuine fact issue. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994) (per curiam) (holding that, even if rational trier of fact could conclude that plaintiff had presented a "scintilla of evidence," "a mere scintilla is not enough to defeat a motion for summary judgment").

Reneker's August 8, 2012 motion for reconsideration is denied.

**SO ORDERED.**

August 22, 2012.

                                                   _____
                                                   SIDNEY A. FITZWATER
                                                   CHIEF JUDGE